No. 122,576

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALEXANDER CHRISTOPHER HUNT,
*Appellant*.


SYLLABUS BY THE COURT

1.

An unconstitutional constructive amendment occurs when the evidence presented at trial, together with the jury instructions, so alters the information as to charge a different offense.


2.

When two or more criminal statutes can apply to a given set of facts, the identical offense doctrine—rather than the rule suggesting the defendant can only be convicted of the more specific statute—is the proper analytical tool to determine which crime the defendant can be convicted of and sentenced under.


3.

A multiple acts crime occurs when the State alleges several acts and any one of them could constitute the crime charged. The threshold question in a multiple acts analysis is whether the defendant's conduct is part of one act or represents multiple acts which are separate and distinct from one another. But when the State alleges the defendant committed a crime more than one time, without separating or distinguishing the acts from one another, the scenario does not implicate jury unanimity.


1

4.

The separation of powers doctrine acknowledges that each branch of government has its own functions and powers. The Legislature makes the laws, the executive branch executes the laws, and the judicial branch construes the laws. A violation of the separation of powers doctrine occurs when one branch usurps or intrudes on the powers of another branch.

5.

Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. Standing requires the litigant to establish a cognizable injury and establish a causal connection between the injury and the challenged conduct.

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed December 17, 2021. Affirmed in part and dismissed in part.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE, J., and JAMES L. BURGESS, S.J.

MALONE, J.:  Alexander Christopher Hunt appeals his convictions of two counts of aggravated indecent liberties with a child. Hunt raises several issues for the first time on appeal that he did not raise in district court. Hunt argues on appeal that (1) the State constructively amended the information on one of the counts and sought a conviction for uncharged conduct; (2) the State violated his constitutional and statutory rights to a unanimous verdict by charging him with a multiple acts crime; (3) no law authorizes a

multiple acts crime and allowing the State to prosecute a multiple acts crime violates the separation of powers doctrine; (4) the State committed reversible prosecutorial error during voir dire and closing arguments; (5) cumulative error denied him a fair trial; and (6) K.S.A. 2020 Supp. 21-5506(b)(3)(A) is facially unconstitutional under both section 5 and section 1 of the Kansas Constitution Bill of Rights. We find that Hunt lacks standing to raise his final claim and otherwise affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In late November or early December 2018, Hunt, a homeless man, was invited to stay at a house shared by several people including C.W. and her eight-year-old daughter, A.W. While there, Hunt allegedly committed many sex acts with A.W. Fortunately, we need not describe the sex acts in any significant detail to address the claims Hunt brings in this appeal. We will only describe the two incidents supporting the two counts of aggravated indecent liberties with a child for which Hunt was convicted.

One time, Hunt made A.W. do what she called a "sandwich." A.W. explained that Hunt laid on the floor and unzipped his pants. He had "his part," that he uses to go to the bathroom, out and A.W. was on top of him. Hunt then moved up and down. A.W. said that his part would touch her "under area," the area she used to pee. A.W. said that this was "very uncomfortable." Hunt told A.W. not to tell anyone because he would get in trouble. A.W. later told an interview specialist at Sunflower House that Hunt did that a lot. At trial, A.W. testified that she believed it happened six times.

On another occasion, while A.W. was doing a yoga move she called the candlestick, Hunt took her pants off, moved her underwear to the side, and licked her "down there." Hunt then used his finger to "rub [the saliva] in." A.W. said that it was very uncomfortable for her to pee that day.

3

The State charged Hunt with one count of rape and three counts of aggravated indecent liberties with a child. At the jury trial, the State presented the testimony of C.W., A.W., and other witnesses who investigated the allegations and interviewed A.W. After A.W. testified, the State dismissed count four, aggravated indecent liberties with a child. The State proceeded with count one, rape based on penile penetration; count two, aggravated indecent liberties with a child for the "sandwich" incident; and count three, aggravated indecent liberties with a child for the yoga pose incident.

The defense presented no evidence. But Hunt argued that A.W. was "starved" for attention from her mother and so when C.W. pressed her, A.W. made accusations against Hunt. Hunt also argued that the entire investigation consisted of obtaining statements and that law enforcement never requested a medical exam or obtained any physical evidence.

The jury acquitted Hunt of rape but convicted him of the two counts of aggravated indecent liberties with a child. The district court sentenced Hunt to two hard 25 life sentences, to run concurrently, and lifetime parole. Hunt timely appealed his convictions.

### DID THE STATE CONSTRUCTIVELY AMEND THE INFORMATION?

For the first time on appeal, Hunt argues that the State constructively amended count three—aggravated indecent liberties with a child—by telling the jury to convict on that count if it found Hunt digitally penetrated and licked A.W.'s vagina. Hunt argues that under Kansas law, the digital penetration would be rape and the licking of A.W.'s vagina would be sodomy. Thus, Hunt argues the State "sought a conviction based on uncharged conduct"—rape and sodomy—which constructively amended count three's charge of aggravated indecent liberties with a child.

The State asserts that the constructive amendment rule applies to a grand jury indictment, not an information, and that Kansas has not adopted a constructive

4

amendment test. The State then asserts that no constructive amendment occurred because licking and digital penetration can be considered lewd fondling and supports the charge of aggravated indecent liberties. The State also argues that the information did not specify which acts constituted aggravated indecent liberties and any reference to the licking or digital penetration was merely recounting the details A.W. gave about the lewd fondling.

Generally, this court does not hear issues raised for the first time on appeal, even constitutional ones. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But there are exceptions to the rule, including when "[t]he newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case [or when] consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights." 299 Kan. at 493. We will address Hunt's claim because it involves only a question of law on proved or admitted facts.

An unconstitutional constructive amendment "occurs when the evidence presented at trial, together with the jury instructions, 'so alter[s] [the information] as to charge a different offense . . . ." *United States v. Farr*, 536 F.3d 1174, 1180 (10th Cir. 2008); *State v. Nesbitt*, No. 121,647, 2021 WL 3124049, at *3 (Kan. App. 2021) (unpublished opinion) (applying *Farr*'s constructive amendment rules for indictments to an information), *petition for rev. filed* August 19, 2021. To determine whether a constructive amendment has occurred, the court must examine whether the crime for which the defendant was convicted at trial was charged in the charging document. *Farr*, 536 F.3d at 1180; *Nesbitt*, 2021 WL 3124049, at *3. To make this determination, the court compares the charging document "with the district court proceedings to discern if those proceedings broadened the possible bases for conviction . . . ." *Farr*, 536 F.3d at 1180; *Nesbitt*, 2021 WL 3124049, at *3. Whether a constructive amendment occurred is subject to de novo review. *Farr*, 536 F.3d at 1179; *Nesbitt*, 2021 WL 3124049, at *2.

5

Count three of the information alleged that "Hunt, did unlawfully engage in lewd fondling or touching of the person of a child, to-wit: A.W. (YOB: 2010), who was under 14 years of age, done with the intent to arouse or to satisfy the sexual desires of either the child, the offender or both." The instruction for count three required the State to prove: "The defendant engaged in lewd fondling or touching of A.W. [and t]he defendant intended to arouse or satisfy the sexual desires of A.W. or himself." The instruction included a definition for lewd fondling or touching: "fondling or touching in a manner which tends to undermine the morals of the victim and is so clearly offensive as to outrage the moral senses of a reasonable person. Lewd fondling or touching does not require[] contact with the sex organ of one or the other." The State argued during closing argument that count three was for the yoga pose incident, during which A.W. alleged that Hunt licked her vagina and rubbed his spit in with his finger.

The State is correct that no constructive amendment occurred in this case. To illustrate this point, it helps to consider cases in which a constructive amendment did occur. For instance, in *State v. Holmes*, No. 116,338, 2017 WL 5617102, at *1 (Kan. App. 2017) (unpublished opinion), the charging document alleged that the defendant committed aggravated battery by "'knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted.'" But the jury instruction stated that the defendant committed aggravated battery if he "'knowingly caused physical contact with [the victim] in a rude, insulting, or angry manner, in any manner whereby great bodily harm, disfigurement, or death can be inflicted.'" 2017 WL 5617102, at *2. The panel found that the language in the jury instruction impermissibly broadened the scope of conviction by allowing the jury to convict if it found the defendant merely made physical contact with the victim rather than requiring the jury to find the defendant caused bodily harm. 2017 WL 5617102, at *6.

Similarly, this court found an impermissible constructive amendment in *State v. Montes*, No. 104,563, 2012 WL 307532, at *3 (Kan. App. 2012) (unpublished opinion),

6

when the complaint alleged the defendant "acted in furtherance of the conspiracy when he *obtained pseudoephedrine or obtained lithium metal or obtained anhydrous ammonia or provided a coconspirator with items to manufacture methamphetamine*; whereas in the jury instruction, the State had to prove that Montes acted in furtherance of the conspiracy *by manufacturing methamphetamine*." The panel found the jury instruction to be clearly erroneous and reversed the defendant's conspiracy conviction. 2012 WL 307532, at *4-5.

In contrast, no constructive amendment occurred in *Nesbitt* when the information charged the defendant with aggravated robbery based on the infliction of bodily harm to a named victim while the instruction merely stated the jury had to find bodily harm was inflicted on any person. *Nesbitt*, 2021 WL 3124049, at *4. The panel explained that "the essential elements of the crime involve the statutory elements, not the specific actions or specific persons listed in the charging document" and the instruction still contained the essential elements of aggravated robbery as it was charged. 2021 WL 3124049, at *4-5.

Comparing Hunt's argument to the cases above, no constructive amendment occurred. As in *Nesbitt*, the same essential elements of the crime were in the instruction and the information. In fact, the information and the instruction mirrored each other.

Hunt's argument is not really a constructive amendment argument. He does not allege that the jury instruction changed any of the essential elements of aggravated indecent liberties as charged in the information. Instead, he asserts that the acts the State relied on to fulfill the lewd fondling or touching element—licking and digital penetration—constituted different, uncharged crimes under Kansas law. But simply because the acts the State relied on for the aggravated indecent liberties charge in count three perhaps could have been charged as other crimes does not mean that Hunt was convicted of uncharged conduct or that a constructive amendment occurred. Interestingly, Hunt admits in his brief that the acts of digital penetration and licking a child's vagina fit the definition of lewd fondling or touching.

7

Hunt's argument is more properly characterized as a general versus specific crime argument. Hunt asserts that "rape is more specific than aggravated indecent liberties when digital penetration is involved[,] and sodomy is more specific than aggravated indecent liberties when oral sex is involved." But even assuming Hunt properly briefed this argument, it would fail. The Kansas Supreme Court recently addressed the "more specific statute" rule in *State v. Euler*, 314 Kan. ___ (No. 119,761, modified opinion filed December 10, 2021). The court explained that the rule has suggested that "when a set of facts supports a conviction under two different criminal statutes, the defendant can only be convicted under the 'more specific' statute." Slip op. at 7, 314 Kan. at ___. But the court went through the history of this rule and found that it had "sketchy origins" and "was never intended to apply to two statutes with divergent elements." Slip op. at 7-8, 314 Kan. at ___.

The court found that "when a criminal statute by its plain language unambiguously applies to a given set of facts . . . the Legislature *intended the statute to apply*. Given this, the legislative intent exception swallows the 'more specific statute rule' whole." Slip op. at 9, 314 Kan. at ___. The court explained that "the better, more rigorous, predictable, and definable mode of analysis in these kinds of cases proceeds under the identical offense doctrine which requires 'where two offenses have identical elements, an offender can be sentenced to only the less severe penalty applying to the two offenses.'" Slip op. at 13, 314 Kan. at ___. The court found the identical offense doctrine applies "when either 'some provisions in two statutes overlap, the overlapping provisions apply to the charged crime, and the overlapping provisions are identical except for the penalty provisions' or when 'all provisions in two statutes are identical except for the penalty provisions.'" Slip op. at 13, 314 Kan. at ___.

Based on *Euler*, Hunt's more specific statute argument fails as the court has dispensed with the rule he relies on. Instead, the true question, which Hunt does not even mention, is whether the two offenses—aggravated indecent liberties with a child versus

8

rape and aggravated indecent liberties with a child versus aggravated criminal sodomy—have identical elements. They do not. As applied to the facts here, rape is defined as "sexual intercourse with a child who is under 14 years of age" and aggravated criminal sodomy is defined as "[s]odomy with a child who is under 14 years of age." See K.S.A. 2020 Supp. 21-5503(a)(3) and K.S.A. 2020 Supp. 21-5504(b)(1). Aggravated indecent liberties with a child is:  "Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" with a child who is under 14 years old. See K.S.A. 2020 Supp. 21-5506(b)(3)(A). Aggravated indecent liberties contains a specific intent element that both rape and sodomy do not. Because the elements of these statutes are different, they do not present an identical offense problem even if the facts would have supported a conviction under either statute.

In sum, because the jury instruction matched the language in count three of the information and the State's argument did not broaden the basis for the charge, Hunt has failed to establish that the State constructively amended count three. Hunt's argument is really a more specific statute argument, but such a challenge fails because the Kansas Supreme Court has dispensed with the "more specific statute" rule. And even applying the correct test under the identical offense doctrine, aggravated indecent liberties with a child has a specific intent element that both rape and sodomy do not, and so they cannot be considered identical offenses. Thus, under any interpretation of Hunt's argument, he has no right to relief on his claim.

### DID THE STATE VIOLATE HUNT'S RIGHT TO A UNANIMOUS VERDICT?

For the first time on appeal, Hunt argues that the State violated his constitutional and statutory rights to a unanimous verdict on count two. Count two involved the "sandwich" incident, where A.W. alleged that Hunt made her "sandwich" his "part" and move up and down on him. A.W. told an interview specialist that Hunt did that a lot, and

9

she testified at trial that she believed it happened six times. The district court issued a multiple acts instruction for count two, informing the jury that it must unanimously agree upon the same underlying act to find Hunt guilty.

Hunt acknowledges that the district court provided a multiple acts instruction, but he asserts that the State still contravened his right to a unanimous verdict despite the instruction because of the way it presented its case. Hunt complains that A.W. gave no details to differentiate any of the six incidents from one another and thus the jury could not have agreed on any given incident. Hunt argues that "[w]henever the State alleges multiple acts and at the same time fails to provide evidence distinguishing those separate acts from one another, the State has violated the right to a unanimous verdict on the specific act." Hunt claims "[t]his scenario violates the Sixth Amendment to the United States Constitution; section 5 of the Kansas Constitution Bill of Rights; and K.S.A. 2[2]-3421, the statutory right to a unanimous verdict."

The State counters that Hunt cites no caselaw to support his proposition that specific details of each incident are required for a jury to reach a unanimous verdict. The State asserts that, regardless, A.W. did provide details of the first incident and that combined with the instruction and the State's closing argument, the jury could reach a unanimous verdict.

The parties agree that Hunt's claim involves constitutional and statutory interpretation—questions of law subject to unlimited review. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). We will address this issue for the first time on appeal under the exception for a newly asserted legal theory involving undisputed facts and the exception for preventing the denial of fundamental rights. See *Phillips*, 299 Kan. at 493.

Both parties agree that when multiple incidents are alleged to support a crime, the jury must be unanimous in which incident or incidents support the crime. This is

10

supported by both federal and state law. The United States Supreme Court has found that under the Sixth Amendment, a defendant has the right to a unanimous jury verdict in both federal and state court. *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020). Similarly, the Kansas Supreme Court has found that "[w]hen a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime." *State v. King*, 297 Kan. 955, 977-78, 305 P.3d 641 (2013) (citing K.S.A. 22-3421, which statutorily requires the same).

We disagree with Hunt's fundamental premise that when the State alleges multiple acts and at the same time fails to provide evidence distinguishing those separate acts from one another, the State has violated the defendant's right to a unanimous verdict on the specific act. A multiple acts crime occurs when the State alleges several acts and any one of them could constitute the crime charged. *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007). "'The threshold question in a multiple acts analysis is whether the defendant's conduct is part of one act or represents multiple acts which are *separate and distinct* from one another.'" 284 Kan. at 244. But when, as here, the State alleges the defendant committed a crime more than one time, without separating or distinguishing the acts from one another, the scenario does not implicate jury unanimity.

For instance, had A.W. testified that the "sandwich" incident happened one day in the bedroom and on another day in the living room and on another day in the kitchen, then the jurors would have been presented with separate and distinct acts, and they could have possibly disagreed on which act Hunt committed. In this situation, "'either the State *must* inform the jury which act to rely on in its deliberations or the court *must* instruct the jury to agree on a specific criminal act.'" 284 Kan. at 244-45. Otherwise, there would be a potential jury unanimity issue and a multiple acts error. See 284 Kan. at 245.

But at trial, A.W. only described the "sandwich" incident one time without giving any specific date when it happened or location where it occurred. After A.W. described

11

the incident, the prosecutor asked, "Do you know in your head how many times this sandwich stuff would happen with him?" A.W. answered, "I believe it was six." The information charged Hunt with one count of aggravated indecent liberties with a child arising from this incident occurring between November 22, 2018, and December 15, 2018, the approximate time frame Hunt stayed at the house. Hunt's defense to the charge was that C.W. pressed A.W. to make the accusation and that there was no physical evidence to prove that the incident ever happened.

Where's the jury unanimity problem in this scenario? How could some jurors have found that the crime happened on one occasion while other jurors found that the crime happened on a different occasion? The jurors could not have disagreed on which one of the six possible times Hunt committed the act if there was not any way for them to separate or distinguish the acts. Under the facts presented and argued by the State, the jurors either unanimously agreed that the incident happened as A.W. described or they unanimously agreed there was reasonable doubt that it did not happen. Either way, Hunt was not deprived of his statutory and constitutional rights to a unanimous verdict.

Although not cited by either party, we find *State v. De La Torre*, 300 Kan. 591, 331 P.3d 815 (2014), to be instructive. In that case, the defendant was the primary caregiver for his girlfriend's 11-month-old daughter. On September 6, 2009, the defendant brought the child into the emergency room and she was barely breathing. The defendant explained that he was carrying the child from her bath when he tripped and fell to the floor, landing on top of the child and causing her to stop breathing. The child died at the hospital and an autopsy revealed her death was caused by blunt force trauma to the chest. But it also revealed many older bruises on the child's face and in her scalp. The defendant did not have an explanation for most of the older bruises, although the evidence showed that the child had accidently fallen from the couch a few days before she died, and the defendant's son often grabbed the child's cheeks causing bruises.

12

The State charged the defendant with one count of child abuse between August 15, 2009, and September 6, 2009, and one count of felony murder. Although it took two trials, a jury found the defendant guilty of both counts. On appeal, our Supreme Court analyzed the child abuse conviction as a multiple acts crime and pointed out that "a multiple acts problem may arise even when the factual details about the multiple incidents are indefinite as to precisely when each occurred or even how many acts occurred." 300 Kan. at 598 (citing Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 323-25 [2005] [discussing issues posed by "generic evidence" cases, prevalent in child abuse cases]).

Because the State did not elect which acts were the basis for the child abuse charge and the district court did not instruct the jury to be unanimous on the count, our Supreme Court found a multiple acts error. *De La Torre*, 300 Kan. at 599. The court then pointed out that the defendant had not presented a unified defense because some jurors could have found the defendant only intentionally caused the older bruising while other jurors could have found he only intentionally caused the injuries on September 6. 300 Kan. at 600. Because the court was not convinced the error was harmless, it reversed the child abuse conviction. 300 Kan. at 601.

We discuss *De La Torre* only because the case comes close to what we have here. The State prosecuted a multiple acts crime in *De La Torre* even when the factual details about the multiple acts were indefinite as to precisely when each occurred or even how many acts occurred. But *De La Torre* is distinguishable because that case presented a clear jury unanimity issue between whether the defendant intentionally caused the child's older injuries versus the final injuries that caused her death. As discussed above, Hunt's case does not present that type of jury unanimity issue.

To begin to sum up, we find that Hunt's case really does not present a multiple acts crime and it was probably unnecessary for the district court to give a multiple acts

13

instruction on count two. Hunt's case is typical of many cases alleging the defendant committed a sex act against a child. The child can often describe the sex act but is unsure of the time frame or how many times the act occurred. Unless the State presents evidence of separate and distinct acts that could cause jurors to disagree on which act supports the charge, there is no jury unanimity issue.

But even if count two can somehow be analyzed as a multiple acts crime, the district court instructed the jurors that they "must unanimously agree upon the same underlying act." Hunt cannot have it both ways. If the State's evidence did not separate and distinguish the acts supporting count two, then there is no jury unanimity issue. But if the State's evidence was presented in a way that could have caused jurors to disagree on which act supported the charge, then the jurors were instructed to unanimously agree on the act. See *State v. Race*, 293 Kan. 69, 77, 259 P.3d 707 (2011) (jurors are presumed to follow the court's instructions). Either way, the State's prosecution of count two did not violate Hunt's constitutional and statutory rights to a unanimous verdict.

### DID THE STATE VIOLATE THE SEPARATION OF POWERS DOCTRINE?

As an alternative claim on count two, Hunt argues, for the first time on appeal, that no law permits the State to charge one count of a crime and then present multiple acts to support the charged crime. Hunt asserts that doing so violates the separation of powers doctrine because the executive branch is usurping the legislative branch by effectively making up laws.

The State counters that Hunt lacks standing to raise this argument because he would still be serving a life sentence for his conviction on count three. The State argues that Hunt's argument essentially is that the State should have charged him with six counts of aggravated indecent liberties instead of one count.

14

The parties agree that whether a multiple acts case violates the separation of powers doctrine is a question of law subject to unlimited review. *State v. Dimaplas*, 267 Kan. 65, 67, 978 P.2d 891 (1999). We will address this issue for the first time on appeal because it involves a question of law on admitted facts. See *Phillips*, 299 Kan. at 493.

"The doctrine of independent governmental branches is firmly entrenched in United States and Kansas constitutional law." *Solomon v. State*, 303 Kan. 512, 525, 364 P.3d 536 (2015). The separation of powers doctrine acknowledges that each branch of government—legislative, judicial, and executive—has its own functions and powers. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 883, 179 P.3d 366 (2008). The Legislature makes the laws, the executive branch executes the laws, and the judicial branch construes the laws. 285 Kan. at 883. A violation of the separation of powers doctrine occurs when one branch usurps or intrudes on the powers of another branch. 285 Kan. at 880. A branch usurps another branch when it significantly interferes with the operations of another branch. 285 Kan. at 884. In determining if there has been significant interference, the court considers: "'(a) the essential nature of the power being exercised; (b) the degree of control by one [branch] over another; (c) the objective sought to be attained . . . ; and (d) the practical result of the blending of powers as shown by actual experience over a period of time.'" 285 Kan. at 884.

To begin, we reject the State's argument that Hunt lacks standing to bring this claim simply because he received concurrent sentences. Hunt has a significant stake in the controversy to invoke the court's jurisdiction and to justify the exercise of the court's remedial powers on his behalf. See *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016). We also observe that we can summarily dismiss Hunt's claim because his case does not present a multiple acts crime on count two, as discussed in the last issue. But even if count two can be analyzed as a multiple acts crime, Hunt's claim that the prosecution violates the separation of powers doctrine lacks merit.

Hunt claims that the State is exercising the power of the Legislature by trying cases in a manner not authorized by law. Hunt is asserting that if there is no law explicitly authorizing the prosecutor to take a specific action, then the prosecutor is creating its own law authorizing the action. But this assertion is flawed for two reasons.

First, Hunt concedes that the prosecutor is provided with the authority to prosecute crimes and present evidence to support the charged crimes. Our Supreme Court has recognized that:

> "A county attorney or district attorney is the representative of the State in criminal prosecutions. As such, he or she controls criminal prosecutions. . . . The prosecuting attorney has broad discretion in discharging his or her duty. The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged. [Citations omitted.]" *State v. Williamson*, 253 Kan. 163, 165, 853 P.2d 56 (1993).

Thus, the law does authorize the prosecutor to determine what crimes, and how many, to charge. This would include the decision to charge only one count even though multiple violations occurred.

Second, Hunt's argument fails to grasp that a multiple acts prosecution does not create a new crime or alter the criminal procedure statutes, which would invade the Legislature's role. Instead, it is merely an exercise of the prosecutor's discretion in choosing not to advance multiple charges even though the evidence would support it.

In sum, Hunt does not persuasively establish that the prosecutor's decision to advance only one charge on multiple acts violated the separation of powers doctrine. Hunt's claim that we must reverse his conviction on count two for this reason fails.

DID THE STATE COMMIT REVERSIBLE PROSECUTORIAL ERROR?

Hunt argues that the prosecutor committed reversible prosecutorial error. Hunt challenges two statements: (1) the prosecutor's statement of A.W.'s age during voir dire and (2) the prosecutor's statement "telling the jury that it could convict on count III . . . if it found that Hunt digitally penetrated or licked A.W.'s vagina."

A claim of prosecutorial error is reviewable for the first time on appeal. *State v. Haygood*, 308 Kan. 1387, 1397, 430 P.3d 11 (2018). The appellate court's review of a prosecutorial error claim involves a two-step process: consideration of error and consideration of prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). In considering whether error has occurred, "the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. In examining the prosecutor's statements, the appellate court reads the statements in context rather than in isolation. *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 (2018).

*Statement during voir dire*

Hunt argues that the prosecutor impermissibly argued her case during voir dire by stating that A.W. was nine years old, a fact which the jury had to determine. The State counters that when the statement is taken in context, the prosecutor was not arguing her case but was properly discerning whether any juror would have a problem with hearing the evidence in the case.

The challenged statement occurred after the prosecutor read the allegations. The prosecutor then stated:

17

"Does anybody think that the fact that a nine-year-old child is going to get up here and talk about sex crimes and allegations that sex crimes have occurred is too sensitive for you to listen to, something that you just can't stomach listening to over the next couple of days? You might hear an eight-year-old child say the word 'vagina' or the word 'penis' or a silly word for those body parts or something like that. And sometimes people have very specific opinions about hearing that type of word from a kid that's quite young. Anybody think they're going to have a kind of like a visceral reaction, a problem listening to evidence from a nine-year-old about these types of crimes?"

The purpose of voir dire is to enable the parties to select jurors who are competent and who could serve without bias, prejudice, or partiality. *State v. Woods*, 301 Kan. 852, 870, 348 P.3d 583 (2015). When the prosecutor's statement is read in context, it is clear she was trying to determine whether the jurors would be incompetent or biased based on the subject matter of the case and how the prosecutor would present the evidence—mainly through the testimony of a young child. In fact, one juror specifically stated that she would have a problem listening to the testimony because she has nieces and nephews who are the same age, and she was already tearing up thinking about a child "getting messed up like that." She confirmed that sitting through a trial with that kind of testimony "would be too much" for her. The State moved to excuse the juror for cause and Hunt did not object. Thus, the prosecutor's inquiry was not only a proper inquiry for voir dire but helped select jurors who were competent and unbiased. The prosecutor did not suggest or imply to the prospective jurors that the State would not need to prove A.W.'s age at the trial. As a result, the prosecutor did not err by stating A.W.'s age during voir dire.

*Statement during closing argument*

Hunt then argues the prosecutor misstated the law when she told the jury it could find Hunt guilty of aggravated indecent liberties if it found that he digitally penetrated or licked A.W.'s vagina. Hunt refers to his argument presented in his first issue as supporting his assertion of error. To review, Hunt's argument in his first issue was that he

18

could not be convicted of aggravated indecent liberties with a child because the licking and the digital penetration would be the crimes of sodomy and rape.

As discussed in Issue I, simply because the facts—the licking and digital penetration—could support different crimes than the one charged does not mean the prosecutor erred in charging aggravated indecent liberties. Thus, the prosecutor did not misstate the law when she asked the jury to convict Hunt of aggravated indecent liberties for these actions. Finding the prosecutor's statements were not erroneous, we need not engage in the prejudice analysis. *Sherman*, 305 Kan. at 109 (stating if error is found, then the court must address prejudice).

## DID CUMULATIVE ERROR DENY HUNT A FAIR TRIAL?

Hunt argues that cumulative error requires reversal of his convictions. A cumulative error analysis aggregates all errors and determines whether the combined effect of the errors violated the defendant's right to a fair trial. *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). But the analysis does not apply unless multiple errors have been found. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Hunt has established no errors. Thus, a cumulative error analysis does not apply.

## IS THE CRIME OF AGGRAVATED INDECENT LIBERTIES WITH A CHILD UNCONSTITUTIONAL UNDER THE KANSAS CONSTITUTION BILL OF RIGHTS?

Hunt brings two more constitutional challenges to his convictions—again for the first time on appeal. Hunt claims the crime of aggravated indecent liberties with a child under K.S.A. 2020 Supp. 21-5506(b)(3)(A) is unconstitutional under both section 5 and section 1 of the Kansas Constitution Bill of Rights. We address these claims together.

Hunt first argues that K.S.A. 2020 Supp. 21-5506(b)(3)(A) is facially unconstitutional under section 5 of the Kansas Constitution Bill of Rights because it does

19

not require the State to prove to the jury that the offender knew the child victim's age. K.S.A. 2020 Supp. 21-5506(b)(3)(A) defines aggravated indecent liberties with a child as "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" with a child who is under 14 years old.

Section 5 of the Kansas Constitution Bill of Rights states: "The right of trial by jury shall be inviolate." Kan. Const. Bill of Rights, § 5. Hunt argues that because K.S.A. 2020 Supp. 21-5506(b)(3)(A) places the mens rea only on the act of lewd fondling and not the child's age, it "in essence" creates a strict liability offense. Hunt then asserts that section 5 requires that juries find that the defendant acted with the requisite mens rea before entering a constitutional verdict. Thus, Hunt argues that the crime of aggravated indecent liberties violates section 5 by not requiring the jury to find a defendant committed the crime with a guilty mind.

Hunt also argues that K.S.A. 2020 Supp. 21-5506(b)(3)(A) is facially unconstitutional under section 1 of the Kansas Constitution Bill of Rights. Section 1 states that "[a]ll men are possessed of equal and inalienable rights, among which are life, liberty, and the pursuit of happiness." Kan. Const. Bill of Rights, § 1.

Hunt argues that because section 1 protects the substantive right of liberty, a criminal statute that results in imprisonment impedes on section 1's protections. Hunt then asserts that the fundamental rights protected by section 1 can be infringed only when the government has a compelling justification—that the infringement can pass strict scrutiny. Hunt asserts that K.S.A. 2020 Supp. 21-5506(b)(3)(A) cannot pass the strict scrutiny test because although it seeks to protect child victims, it is not narrowly tailored. Hunt argues a mental culpability element could be added to the age element and that such an addition would "not increase the risk of harm to any child because the only individuals that avoid punishment are those with no level of culpability whatsoever."

20

A statute's constitutionality is a question of law subject to unlimited review. *Gonzalez*, 307 Kan. at 579. Hunt recognizes he is raising these claims for the first time on appeal, but he asserts the claims only involve questions of law on undisputed facts and consideration of the claims is necessary to prevent a denial of fundamental rights. See *Phillips*, 299 Kan. at 493.

We begin our analysis by addressing whether Hunt has standing to bring these claims. Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. *Jordan*, 303 Kan. at 854. An appellate court has a duty to question jurisdiction. *State v. Maestas*, 298 Kan. 765, 788, 316 P.3d 724 (2014).

Standing requires the litigant to establish "'a cognizable injury and establish a causal connection between the injury and the challenged conduct.'" *State v. Stoll*, 312 Kan. 726, 734, 480 P.3d 158 (2021). A cognizable injury is "'a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct.'" 312 Kan. at 734. Whether a litigant has standing is a question of law subject to unlimited review. 312 Kan. at 734.

The Kansas Supreme Court recently examined a similar standing issue in *Stoll*. There, the appellant challenged the facial constitutionality of the Kansas Offender Registration Act's (KORA) lack of a mens rea requirement as violating her due process rights. But the Kansas Supreme Court pointed out that Stoll did not have standing to raise her challenge because she stipulated that she knew she had a duty to register and thus there was no possibility that the constitutional issue—whether the lack of a mental state in the statute violates due process—had any effect on her case. 312 Kan. 733-34 ("Because she has not successfully argued that she lacked a culpable mental state, she fails to show that the strict liability nature of her offense had any effect on her.").

Similarly, here, Hunt challenges the constitutionality of a statute based on the lack of a mens rea requirement, asserting that he has a right to have a jury determine whether he knew A.W. was under the age of 14. But in this case, like *Stoll*, Hunt never asserted that he did not know A.W.'s age. In fact, Hunt told a police detective that A.W. was eight years old in his interview, which was played at trial. As a result, even if Hunt is correct that the State is constitutionally required to prove he knew A.W.'s age, he suffered no cognizable legal injury because the State presented evidence that Hunt knew A.W.'s age and he never claimed any defense at trial surrounding her age. There is no possibility that the constitutional issues Hunt is trying to raise had any effect on his case. Thus, Hunt lacks standing to bring these claims and they are dismissed.

Affirmed in part and dismissed in part.