NOT DESIGNATED FOR PUBLICATION

No. 127,265

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JODIE A. WOLF,
*Appellant*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Submitted without oral argument. Opinion filed May 30, 2025. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and PICKERING, JJ.

PICKERING, J.: Jodie A. Wolf was convicted of one count of interference with law enforcement for obstructing a McPherson County Sheriff's Office police officer in executing an arrest warrant. She appeals, raising two arguments: (1) The district court constructively amended the complaint by instructing the jury on interference with law enforcement by obstructing an official duty when the amended complaint listed interference with law enforcement by obstructing legal process; and (2) there was insufficient evidence to support her conviction because Bowley's arrest was complete before any obstruction occurred.

1

We find the district court did not constructively amend the complaint. We also note that Wolf invited the error she complains of on appeal because she proposed the jury instruction she challenges. Additionally, there is sufficient evidence to support Wolf's conviction. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, the State charged Wolf with one count of interference with law enforcement under K.S.A. 2020 Supp. 21-5904(a)(3). Specifically, the State alleged Wolf obstructed McPherson County Sheriff's Office Police Officer Connor Davis "in the discharge of his official duty, to-wit: arresting Lance Bowley and/or preventing the destruction of evidence." Bowley is Wolf's son.

In August 2023, the State moved to amend the complaint to clarify its intended charge. The State sought to amend Wolf's interference with law enforcement charge to allege Wolf obstructed Davis "in the service or execution or in the attempt to serve or execute any warrant for the arrest of [Bowley], or in the discharge of any official duty, preventing the destruction of evidence." At a hearing on the motion to amend, the State explained it was "amending the language within count one to follow more closely with the theory which the State is going to proceed, as well as with the language of the statute." Wolf did not object, and the district court granted the motion.

The language in the amended complaint, however, differed from the proposed language in the State's motion to amend information. The amended complaint alleged:

> "That on or about April 20, 2021, in McPherson County, State of Kansas, Jodie Wolf, did then and there, unlawfully and knowingly obstruct, resist or oppose any person authorized by law to serve process, to-wit: Connor Davis, in the service or execution or in the attempt to serve or execute any warrant for arrest, to-wit: arresting Lance Bowley

2

and/or preventing the destruction of evidence, all in violation of K.S.A. 21-5904(a)(3), and amendments thereto."

At trial, the State argued in its opening statement that Wolf "obstructed and interfered with [Davis] trying to execute the warrant that was out for [Bowley]." Davis testified that he received a call from the Moundridge Police Department about executing a felony arrest warrant for Bowley at Auto House Towing in Galva, Kansas. Davis walked into the foyer at Auto House and saw Bowley along with Wolf. Davis told Bowley "to put his hands behind his back," at which point Bowley "shoved his right hand into his front right pocket" of his jeans. Davis believed Bowley "was trying to grab something" from his pocket. Davis then grabbed Bowley's hands, put them behind Bowley's back, and began handcuffing Bowley.

As Davis was handcuffing Bowley, Bowley began whispering to Wolf. Wolf "hastily arose out of the chair that she was sitting in and advanced towards [Bowley]." Bowley then told Wolf "to check [Bowley's] pockets." Davis had not yet locked Bowley's handcuffs at this point. Bowley nodded his head toward his front right pocket. Wolf "immediately shoved her hand into [Bowley's] front right pocket" while ignoring Davis' commands to stop. Davis had to forcibly take Wolf's hand out of Bowley's pocket as Wolf was "gripping on the inside of [Bowley's] pocket." Davis did not inquire of either Wolf or Bowley why Wolf went into Bowley's pocket at Bowley's request. Davis estimated that Wolf's "non-compliance" lasted around eight seconds. He testified that Wolf's actions "slowed [the arrest] down and posed additional safety risks."

Wolf did not remove anything from Bowley's pocket, though Davis searched the pocket and found baggies of black tar heroin, suboxone (a prescription drug meant to treat opioid dependence), THC wax, marijuana, methamphetamine, and crystal methamphetamine.

3

Following Davis' testimony, Wolf moved for a directed verdict of acquittal, arguing the State failed to prove the element of substantial hindrance to execution of the arrest warrant on which the jury would be instructed. The district court denied the motion.

Bowley testified that during the incident in question, Bowley asked Wolf to grab his wallet and money out of his right back pocket, which Wolf did. He claimed nothing happened while Wolf grabbed Bowley's wallet and money, but Davis "got upset" afterward. Bowley testified that he was not attempting to have Wolf remove drugs from his pocket.

During closing argument, the State told the jury that "the burden of proof . . . the State has to show is that the act substantially hindered or increased the burden of the deputy, in this case . . . Davis." The State then asked the jury to "find . . . Wolf guilty of interference and obstructing a legal duty."

Both the State's proposed jury instructions and Wolf's proposed jury instructions listed PIK Crim. 4th 59.040 (2023 Supp.)—interference with law enforcement for obstructing an official duty—as the proper elements instruction. During the instructions conference, the district court announced it would instruct the jury under PIK Crim. 4th 59.040. Wolf did not object.

The jury convicted Wolf. The verdict form specifically stated Wolf was "guilty of Interference with Law Enforcement by Obstructing Official Duty." The district court sentenced Wolf to 12 months of probation. Wolf now appeals.

4

ANALYSIS

*The District Court Did Not Constructively Amend the Complaint*

Wolf asserts the district court constructively amended the complaint by instructing the jury on interference with law enforcement by obstructing an official duty when the amended complaint charged Wolf with interference with law enforcement by obstructing an attempt to execute an arrest warrant. Wolf argues "interfering with law enforcement via obstructing legal process and obstructing an official duty are not interchangeable." Therefore, Wolf submits that the instruction on obstructing an official duty "impermissibly broadened the basis for [Wolf's] conviction and constituted a constructive amendment." Wolf claims a constructive amendment to the complaint is per se reversible error not subject to harmlessness.

The State responds that no constructive amendment occurred because "Wolf was convicted of the same crime for which she was charged: interference of law enforcement during the arrest of [Bowley]." The State also suggests that obstruction of an official duty and obstruction of the execution of a warrant are not as distinct as Wolf suggests. The State contends executing an arrest warrant is an "official duty" of law enforcement and the goal of K.S.A. 2020 Supp. 21-5904(a)(3) is "criminalizing interfering with the execution of an arrest warrant." Additionally, the State argues that because the jury instruction required a finding that Davis was executing an official duty in arresting Bowley, the instruction mirrored the offense described in the complaint.

*Preservation*

Wolf acknowledges that she raises this issue for the first time on appeal. Appellate courts do not generally consider arguments raised for the first time on appeal. "Exceptions to this general rule exist, including when the issue involves only questions of

5

law and is finally determinative of the case or when consideration of the issue is necessary to serve the ends of justice or prevent a denial of fundamental rights." *State v. Peters*, 319 Kan. 492, 522, 555 P.3d 1134 (2024).

Wolf asks us to review this issue for the first time on appeal as either a question of law arising on undisputed facts and is determinative of the case or to prevent the denial of a fundamental right. She correctly notes that another panel of this court considered this issue for the first time on appeal in *State v. Hunt*, 61 Kan. App. 2d 435, 438-42, 503 P.3d 1067 (2021). Like the *Hunt* panel, we believe Wolf's claim "'involves only a question of law arising on proved or admitted facts . . . .'" 61 Kan. App. 2d at 438. Thus, we will review this issue, notwithstanding Wolf's failure to raise it at the district court.

### *Standard of Review*

"Whether a constructive amendment occurred is subject to de novo review." *Hunt*, 61 Kan. App. 2d at 438-39 (citing *United States v. Farr*, 536 F.3d 1174, 1179 [10th Cir. 2008]).

### *Analysis*

The Tenth Circuit Court of Appeals recognized two kinds of variances that occur when the crime charged differs from the crime forming the basis for the conviction. The first is "a simple variance, which occurs 'when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Koerber*, 10 F.4th 1083, 1115 (10th Cir. 2021). The second is a constructive amendment.

> "A constructive amendment occurs when 'the district court's instructions and the proof offered at trial broaden the indictment.' That is to say, a constructive amendment

'modif[ies] essential elements of the offense charged [such] that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.' [Citations omitted.]" 10 F.4th at 1116.

A simple variance is subject to harmless error analysis, whereas a constructive amendment is automatically reversible. The burden of proof is on the defendant to show whether a constructive amendment occurred and "'was fatal.'" 10 F.4th at 1115-16.

*Constructive Amendments in Kansas Courts*

Wolf compares this case to *State v. Holmes*, No. 116,338, 2017 WL 5617102 (Kan. App. 2017) (unpublished opinion). There, the State charged Holmes with aggravated battery, alleging he "'feloniously and knowingly cause[d] bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted.'" 2017 WL 5617102, at *1. However, the district court instructed the jury that it had to find Holmes "'knowingly caused physical contact . . . in a rude, insulting, or angry manner, in any manner whereby great bodily harm, disfigurement, or death can be inflicted.'" 2017 WL 5617102, at *2. The jury instruction was drawn from K.S.A. 2015 Supp. 21-5413(b)(1)(C), whereas Holmes was charged under K.S.A. 2015 Supp. 21-5413(b)(1)(B).

The *Holmes* panel found that because the jury instruction drew from a subsection of the aggravated battery statute not charged in the complaint and, thus, broadened the basis for Holmes' conviction, the instruction constituted a constructive amendment. 2017 WL 5617102, at *5. Therefore, because the instruction contained language broader than that contained in the complaint, the panel concluded that "the jury was instructed on an entirely separate crime than Holmes was charged with" and reversed for a new trial. 2017 WL 5617102, at *6.

But *Holmes* is distinguishable. There, the defendant was charged under K.S.A. 2015 Supp. 21-5413(b)(1)(B), which required "knowingly causing *bodily harm* to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." (Emphasis added.) But the instruction given related to K.S.A. 2015 Supp. 21-5413(b)(1)(C), which only required "knowingly causing *physical contact* with another person *when done in a rude, insulting or angry manner* with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." (Emphases added.) Instead of proving "bodily harm" occurred, the State merely had to prove "physical contact . . . when done in a rude, insulting or angry manner" occurred. This difference "impermissibly broadened the basis for conviction against Holmes," and was, therefore, a constructive amendment. 2017 WL 5617102, at *6.

*State v. Dickerson*, No. 125,529, 2024 WL 62834 (Kan. App. 2024) (unpublished opinion), further illustrates this point. The State ultimately charged Dickerson with interference with law enforcement for obstruction of an official duty, specifically "'detention while awaiting confirmation of a warrant.'" 2024 WL 62834, at *1. However, the evidence at trial showed that the officer had already confirmed the existence of the warrant before Dickerson engaged in any obstruction. The district court instructed the jury that it had to find the officer "was discharging an official duty," though the instruction did not specify what that official duty was. 2024 WL 62834, at *2. This omission "compounded the problem" because it "broadened the possible bases by which the jury could return a guilty verdict." 2024 WL 62834, at *4. In other words, the State no longer had to prove Dickerson interfered with "'detention while awaiting confirmation of a warrant'"; a jury could convict based on interference with *any* official duty. 2024 WL 62834, at *4. And, in closing argument, the State argued a different official duty than the one alleged in the complaint, suggesting Dickerson interfered with the officer's "official duty to execute the outstanding warrant and arrest Dickerson." 2024 WL 62834, at *4.

The *Dickerson* panel held:

"What was once a mere variance between the complaint and evidence at trial transformed into a fatal incongruity when the district court instructed the jury on broader terms than the charges and the State argued to the jury that Dickerson interfered with the official duty to execute and serve the arrest warrant." 2024 WL 62834, at *5.

Because the evidence, the instructions, and the State's arguments "supported a conviction based on a charge different from the one contained in the complaint," the panel reversed "based on an unconstitutional constructive amendment." 2024 WL 62834, at *5.

Here, the amended complaint charged:

"That on or about April 20, 2021, in McPherson County, State of Kansas, Jodie Wolf, did then and there, unlawfully and knowingly obstruct, resist or oppose any person authorized by law to serve process, to-wit: Connor Davis, in the service or execution or in the attempt to serve or execute any warrant for arrest, to-wit: arresting Lance Bowley and/or preventing the destruction of evidence, all in violation of K.S.A. 21-5904(a)(3), and amendments thereto."

The jury instruction—proposed by both parties—required the State to prove:

"1.     Connor Davis was discharging an official duty, namely arresting Lance Bowley.
"2.     The defendant knowingly obstructed Connor Davis in discharging that official duty.
"3.     The act of the defendant substantially hindered or increased the burden of the deputy in the performance of the deputy's official duty.
"4.     At the time the defendant knew or should have known that Connor Davis was a law enforcement officer.

9

"5.     This act occurred on or about the 20th day of April, 2021, in McPherson County, Kansas."

The State was required to prove Wolf knowingly interfered with Davis' ability to arrest Bowley. Unlike the instructions in *Holmes* and *Dickerson*, the jury instruction here did not "impermissibly broaden[]" the "possible bases by which the jury could return a guilty verdict." *Dickerson*, 2024 WL 62834, at *4; *Holmes*, 2017 WL 5617102, at *6. Any variance between the amended complaint and the instruction did not make it easier for the State to prove its case. As a result, the jointly proposed jury instruction did not constructively amend the complaint.

Further, even if the instruction constituted a constructive amendment, Wolf invited the error when she proposed the same instruction and noted that the "State's proposal is fine." "[A] litigant may not invite an error and then complain of the error on appeal." *State v. Green*, 315 Kan. 178, 183, 505 P.3d 377 (2022).

*The State Presented Sufficient Evidence to Support Wolf's Conviction for Obstruction of an Official Duty*

*Standard of Review*

"'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

"This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

*Analysis*

Wolf claims the State failed to prove she obstructed the execution of an arrest warrant because "Davis had already executed the warrant when [Wolf] put her hand into [Bowley's] pocket." Wolf suggests that Davis had restrained Bowley by the time Wolf reached into Bowley's pocket. Therefore, according to Wolf, "it was impossible for her actions to interfere with [Davis'] execution of the arrest warrant."

The State replies that Wolf's argument asks the panel to reweigh the evidence. Because Wolf reached into Bowley's pocket before Davis had secured Bowley's handcuffs, the State argues there was sufficient evidence to support Wolf's conviction. The State cautions that "[h]olding that any form of restraint equates to the execution of the [arrest] warrant would lead to absurd results." The State suggests that, under Wolf's interpretation, any person in handcuffs "could forcefully fight against being placed into a police vehicle or jail" or "could briefly escape," yet no interference would occur because the person was handcuffed. We agree.

Again, K.S.A. 2020 Supp. 21-5904(a)(3) defines interference with law enforcement as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." Our Supreme Court has defined obstruction as:

> "'"[T]o interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means."' While actual force is not necessary, '[t]here must . . . be some actual overt act of obstruction.' The crime encompasses both physical acts and oral statements. [Citations omitted.]" *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017).

11

Here, Wolf reached into Bowley's pocket as Davis was handcuffing Bowley but before Davis had secured the handcuffs. Wolf ignored Davis' commands to stop, causing Davis to forcibly remove Wolf's hand from Bowley's pocket and separate Wolf from Bowley. The obstruction in this case occurred before Davis finished securing Bowley's handcuffs. Therefore, Wolf's argument that the evidence was insufficient because the arrest was already complete is unpersuasive. Viewing the evidence in a light most favorable to the State, a rational fact-finder could conclude that Wolf obstructed Davis in the execution of an arrest warrant. See *Aguirre*, 313 Kan. at 209.

To conclude, the jury instruction given by the district court did not constructively amend the complaint. And sufficient evidence supports Wolf's conviction. As such, we find no error.

Affirmed.