NOT DESIGNATED FOR PUBLICATION

No. 125,529

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONDA DICKERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed January 5, 2024. Affirmed in part, reversed in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defenders Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: Sometimes, criminal charges are misaligned with the evidence presented at trial. This misalignment can be aggravated by the giving of jury instructions and the arguments of counsel. When the misalignment becomes too great, the conviction must be reversed as a violation of due process.

These principles are at the heart of Ronda Dickerson's appeal. He alleges that there is a substantial likelihood that his conviction was for an offense broader than the one for which the State charged him. He is correct. We find the State impermissibly and

1

constructively amended its complaint by presenting evidence and arguing for an offense that was not contained in its complaint. For this reason, we must reverse Dickerson's conviction of interference with law enforcement and remand with directions. The conviction of possession of drug paraphernalia is affirmed.

*Being well known can be disadvantageous.*

After noticing a familiar white Chevy truck in a gas station parking lot, Officer Paul Lednicky asked for a warrant check on the suspected driver, Ronda Dickerson. Once Lednicky confirmed the existence of outstanding warrants in the National Crime Information Center (NCIC), he called dispatch to verify. In the meantime, Lednicky called for a backup officer to assist in the likely arrest of Dickerson. Upon the arrival of backup, and once dispatch verified the warrants, Lednicky approached the truck on foot.

Lednicky greeted the driver, stating, "Hey, what's going on, Mr. Dickerson?" Receiving no response, Lednicky identified himself as a police officer and informed Dickerson that he had "warrants for your arrest. I need you to get out of the truck." Dickerson ignored Lednicky's commands to exit the truck and turn off the ignition. Resistance to commands continued until Lednicky drew his taser and threatened its use if Dickerson continued to resist. Dickerson complied, and Lednicky placed him under arrest for interference. Upon a search of Dickerson's person incident to his arrest, officers found a clear glass pipe with a burnt end.

The State charged Dickerson with interference with law enforcement, a severity level 9 nonperson felony, and possession of drug paraphernalia, a class B nonperson misdemeanor. In the State's first complaint, it alleged that Dickerson obstructed Lednicky in the "discharge of an official duty, namely confirmation of a warrant." The State later amended the complaint to change the official duty to "detention while awaiting confirmation of a warrant."

2

*Officer Lednicky's testimony established what happened.*

At trial, Lednicky testified that he knew Dickerson had multiple outstanding felony warrants before conducting any inquiry through NCIC or the dispatcher. He testified that he confirmed the warrants through the database and then verified with the dispatcher before initiating any interaction with Dickerson. However, ambiguity arose when Lednicky testified about the warrant confirmation process that takes place subsequent to arrests. Lednicky testified that after placing Dickerson under arrest for interfering with his official duty of confirming a warrant, he went through his typical process to verify the warrant.

*The trial court instructed the jury on the interference charge.*

The trial court instructed the jury on the interference charge, setting out all of the elements of the crime:

"Instruction No. 10

"The defendant is charged with interference with law enforcement by obstructing official duty. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. Paul Lednicky was discharging an official duty.
2. The defendant knowingly obstructed Paul Lednicky in discharge of that official duty.
3. The act of the defendant substantially hindered or increased the burden of the officer in performance of the officer's official duty.
4. At the time the defendant knew or should have known that Paul Lednicky was a law enforcement officer.
5. This act occurred on or about the 2nd day of December, 2021, in Leavenworth County, Kansas.

"The state must prove that the defendant committed the crime of interference with a law enforcement officer by obstructing official duty knowingly. A defendant act[s] knowingly when the defendant is aware of the nature of his conduct that the state complains about."

3

The jury returned a guilty verdict on both the interference and possession of drug paraphernalia charges. The court sentenced Dickerson to concurrent sentences of 16 months in prison and 6 months in jail.

Dickerson appeals, claiming constructive amendment of the interference charge and instruction error.

*Constructive amendments to complaints are unconstitutional and reversible.*

It is fundamental that all accused must be advised of what crimes they are charged with committing. The State cannot do a "bait and switch" and charge a crime one way and then turn around and prove a different crime at trial.

To permit convictions premised on charges not contained in the State's charging instrument offends the notions of fundamental fairness and due process. It "is axiomatic in our legal system that 'a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.'" *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008) (quoting *Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 4 L. Ed. 2d 252 [1960]). Because the language employed by the State in complaints "becomes an essential and delimiting part of the charge itself . . . 'the jury instructions and evidence introduced at trial must comport with'" the complaint. *Farr*, 536 F.3d at 1181 (quoting *United States v. Bishop*, 469 F.3d 896, 902 [10th Cir. 2006]).

We follow the Tenth Circuit Court of Appeals concerning constructive amendments of criminal complaints. *State v. Holmes*, No. 116,338, 2017 WL 5617102, at *3 (Kan. App. 2017) (unpublished opinion) (citing *Farr*, 536 F.3d at 1179).

Differences in the charged conduct and the evidence proven at trial present variances which may warrant reversal. A variance may occur in two different ways: (1)

where the charging terms do not change, but the evidence at trial proves facts materially different from the facts alleged in the complaint; and (2) where the evidence presented at trial, coupled with the jury instructions, so alters the complaint as to charge a different crime. See *United States v. Koerber*, 10 F.4th 1083, 1115-16 (10th Cir. 2021), *cert. denied* 143 S. Ct. 326 (2022). The first scenario presents a simple variance which triggers harmless error review; the latter presents an impermissible constructive amendment which is reversible per se. *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007); see *State v. Vaughn*, No. 111,430, 2016 WL 367917, at *17 (Kan. App. 2016) (unpublished opinion); *State v. Thomas*, No. 78,991, 1999 WL 35814151, at *2 (Kan. App. 1999) (unpublished opinion).

We must determine, then, if Dickerson's conviction for interference with law enforcement was the same crime charged in the complaint.

*A mere variance can become an unconstitutional constructive amendment of the complaint.*

The State's complaint was amended several times before trial. The conduct upon which the State charged Dickerson was interference with law enforcement, defined under the statute as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 2021 Supp. 21-5904(a)(3). The first two complaints listed the elements of the first count, interference with law enforcement—obstruction of official duty, specifically alleging the official duty was the confirmation of a warrant. The second amended complaint narrowed the official duty language further—detention while awaiting confirmation of a warrant.

After reading the statute, we see that there are two means by which interference may be committed: (1) obstructing the service of a warrant or other legal process, and (2)

5

obstructing the discharge of any official duty. See K.S.A. 2021 Supp. 21-5904(a)(3). Whether there has been an obstruction of official duty depends on the facts of each case. "'[T]o obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means.'" *State v. Lee*, 242 Kan. 38, 40, 744 P.2d 845 (1987) (quoting *State v. Merrifield*, 180 Kan. 267, 270, 303 P.2d 155 [1956]).

It is helpful at this point to review our pattern instructions. The Pattern Instructions for Kansas Criminal Advisory Committee recommends using PIK Crim. 4th 59.030 when "the offense charged is obstructing the service or execution of a writ, warrant, process or court order, and PIK 4th 59.040 should be used when the offense charged is obstructing an officer in the discharge of any other official duty." Notes on Use, PIK Crim. 4th 59.040 (2019 Supp.). PIK Crim. 4th 59.040 provides:

> "The defendant is charged with interference with law enforcement by obstructing official duty. The defendant pleads not guilty.
>
> "To establish this charge, each of the following claims must be proved:
>
> 1. *Insert name* was discharging an official duty, namely *insert official duty.*
> 2. The defendant knowingly (obstructed) (resisted) (opposed) *insert name* in discharging that official duty.
> 3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.
> 4. At the time the defendant knew or should have known that *insert name* was a law enforcement officer.
>
> "This act occurred on or about the ____ day of _____, _____, in_____ County, Kansas."

In *State v. Hunt*, 61 Kan. App. 2d 435, 440, 503 P.3d 1067 (2021), the court considered whether a constructive amendment of the complaint occurred where the complaint and instruction varied but "mirrored each other." Thus, where the essential elements of the statutory offense in the charging instrument and the evidence at trial combined with the instructions to the jury and the arguments by the State are substantially the same, no constructive amendment occurs. See 61 Kan. App. 2d at 440.

6

Two panels of our court have found an unconstitutional constructive amendment where the charged conduct differed from the district court's instructions to the jury. In *Holmes*, 2017 WL 561702, at *6, the court found the language in the jury instruction impermissibly broadened the scope of conviction where the complaint alleged the defendant committed aggravated battery by causing bodily harm whereas the instruction stated the defendant committed aggravated battery if he knowingly caused physical contact.

In *State v. Montes*, No. 104,563, 2012 WL 307532, at *5 (Kan. App. 2012) (unpublished opinion), the court held a constructive amendment occurred where the complaint alleged the defendant acted in furtherance of the conspiracy when he obtained the materials or provided a coconspirator with the materials to manufacture methamphetamine while the jury instruction stated the defendant acted in furtherance of the conspiracy by manufacturing methamphetamine.

In contrast, the court in *State v. Nesbitt*, No. 121,647, 2021 WL 3124049, at *5 (Kan. App. 2021) (unpublished opinion), held that a slight difference in the complaint and the instruction to the jury constituted a mere variance because the essential elements of the crime remained unchanged.

After considering these rulings, we hold that to constitute a constructive amendment that requires reversal, the incongruity must concern essential elements of the charged conduct under the statutory offense.

*We apply that rule to the facts in this case.*

By charging a specific type of interference, the State narrowed the possible basis upon which a jury could convict. In the complaint, the State charged Dickerson with interference with law enforcement—obstructing the discharge of an official duty, "*namely*

7

*detention while awaiting confirmation of a warrant.*" (Emphasis added.) Thus, the only way a jury could convict Dickerson would be if the evidence at trial proved Dickerson interfered with Lednicky's official duty to detain Dickerson while he awaited the confirmation of a warrant.

The flaw in the State's charging theory was the fact that Lednicky confirmed the existence of the warrant before ever interacting with Dickerson; thus, the creation of the opportunity for Dickerson to resist and obstruct Lednicky's official duty did not materialize until after confirmation of the warrant. Dickerson instead interfered with Lednicky's official duty to execute and serve the arrest warrant, as the State argued in its closing. "A conviction based on one scenario cannot stand if the defendant's actions actually fit the other scenario." *State v. Stewart*, 31 Kan. App. 2d 357, 359, 65 P.3d 555 (2003).

The trial court's instruction to the jury only compounded the problem. While the district court used the correct PIK instruction for interference under the obstruction of an official duty theory, it omitted the "insert the official duty" portion. By dictating the elements of the interference charge to the jury but omitting the specific official duty alleged by the State, the district court broadened the possible bases by which the jury could return a guilty verdict. The instruction gave no guidance but did open the door for jury speculation.

The State then, understandably, tried to save its trial by taking advantage of the broader charge instructed to the jury by arguing in closing that Dickerson obstructed Lednicky's official duty to execute the outstanding warrant and arrest Dickerson. In rebuttal, the State stressed this official duty and characterized the interference as the decision by Dickerson to resist Lednicky in the execution of his duty to arrest Dickerson based on the outstanding warrant.

8

What was once a mere variance between the complaint and evidence at trial transformed into a fatal incongruity when the district court instructed the jury on broader terms than the charges and the State argued to the jury that Dickerson interfered with the official duty to execute and serve the arrest warrant.

The evidence at trial, the instructions to the jury, and arguments by the State supported a conviction based on a charge different from the one contained in the complaint. We must reverse based on an unconstitutional constructive amendment.

INSTRUCTION ERROR

Dickerson also argues that the omission of the "specific official duty" in the district court's jury instructions violated his right to a unanimous verdict. Even though it is not necessary that we decide this issue, given our decision to reverse and remand, our ruling will guide the district court's new trial, and we will address the merits of this argument.

There appears to be some confusion as to which instruction Dickerson objected to: Instruction No. 14, containing a unanimity instruction, or Instruction No. 10, which contained the interference with law enforcement elements. In his reply brief, Dickerson expressly identifies Instruction No. 10 as the source of his objection, not Instruction No. 14.

*Objections to given jury instructions receive multistep analysis.*

Without an objection to the proposed jury instruction at trial, the proper standard of review is for clear error, whose burden is borne by the party claiming error. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

Objections to jury instructions require a multistep analysis on appeal. We must first determine whether the challenging party has preserved the issue for appeal, which affects the reversibility inquiry in the third step of this analysis. We then determine whether error occurred by considering whether the omitted instruction was factually and legally appropriate. Lastly, we consider whether the error requires reversal, guided by whether the challenging party preserved the issue. *State v. Holley*, 313 Kan. 249, 253-54, 485 P.3d 614 (2021).

*We focus on the second step of the analysis: legal and factual appropriateness.*

The second step of the analysis is of vital importance to this case. We must determine whether the proposed jury instruction was both legally and factually appropriate employing an unlimited standard of review. *Holley*, 313 Kan. at 254. Legal appropriateness is met when the instruction fairly and accurately states the applicable law. *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016). Our inquiry into the factual appropriateness requires us to determine whether the instruction derived support from the facts of the particular case. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Viewed in the light most favorable to the challenging party, we must determine whether sufficient evidence supported the instruction. *Holley*, 313 Kan. at 255.

The confusion persisted into Dickerson's discussion—or lack thereof—of the second step of the analysis. The State points out that Dickerson's clear error analysis appears missing from his brief; thus, the State argues we should consider the issue waived or abandoned as not adequately briefed. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). In his reply brief, Dickerson defends against the allegation of waiver by arguing he implicitly addressed the legal and factual appropriateness of the given instruction. He points to his argument contained in his original brief asserting that the trial testimony "supported two plausible factual scenarios and the instruction did not specify which one, if either, was agreed to by the jurors."

10

It does not appear Dickerson's reply brief complies with Supreme Court Rule 6.05 (2023 Kan. S. Ct. R. at 38). The Rule provides:

> "A reply brief may not be submitted unless *made necessary by new material* contained in the appellee's or cross-appellee's brief. A reply brief must include a specific reference to the *new material* being rebutted and may not include, except by reference, a statement, argument, or authority already included in a preceding brief." (Emphases added.)

There is no mention or explanation of the "new material" to which Dickerson responds in his reply brief. Rather, the reply brief appeared to be a vehicle for Dickerson to reframe his previous arguments and resolve the deficiencies of his initial brief. We thus find that Dickerson abandoned his challenge to Instruction No. 10 by failing to adequately brief the second step of the analysis.

Dickerson's possession of drug paraphernalia conviction is affirmed. The conviction of interference with law enforcement is reversed and remanded for factual proceedings.

Affirmed in part, reversed in part, and remanded with directions.