NOT DESIGNATED FOR PUBLICATION

No. 125,270

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYCE P. HANKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Submitted without oral argument. Opinion filed January 12, 2024. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., MALONE and WARNER, JJ.

PER CURIAM: Bryce P. Hanks appeals his criminal convictions stemming from multiple nonconsensual sexual acts with a minor. Hanks was initially charged with 13 counts of rape, criminal sodomy, aggravated indecent liberties with a child, and furnishing alcohol to a minor, and later convicted by a jury of 6 counts of rape, aggravated criminal sodomy, and aggravated indecent liberties with a child, as well as 2 counts of registration violations under the Kansas Offender Registration Act (KORA). Hanks now raises multiple challenges on appeal, including: (1) The State violated Hanks' constitutional or statutory right to a unanimous verdict, (2) the district court lacked

1

subject matter jurisdiction over the alternative charges alleged by the State, (3) the district court erred by instructing the jury to presume knowing mental state if the State proves intentional mental state, (4) K.S.A. 2022 Supp. 21-5202(c) is facially unconstitutional, (5) the State committed prosecutorial error during voir dire, (6) cumulative error denied Hanks a fair trial, (7) the State presented insufficient evidence to prove the KORA violations, and (8) the rape, sodomy, and aggravated indecent liberties statutes are unconstitutional because they categorically restrict sexual activity for everyone under the age of 16. On our review, we find no errors by the district court or the State despite Hanks' claims, and we find sufficient evidence to support the KORA convictions. And we decline to reach Hanks' constitutional claim presented for the first time on appeal. As articulated below, we affirm the convictions.

FACTUAL AND PROCEDURAL BACKGROUND

The victim began living with Hanks—an acquaintance of her mother—when she was a young girl, around eight or nine years old. Trial testimony revealed that beginning when the victim was 13 years old, Hanks engaged in multiple nonconsensual sexual acts with her until she was 17 years old.

The victim testified that when she was 13 years old, she was forced to perform oral sex on Hanks in a car and was forced to have sexual intercourse with Hanks in his house on a separate occasion. She testified that this type of sexual relationship continued when she turned 14, including an occasion when Hanks performed oral sex on her. The victim also told the district court that Hanks continued to force her to have sexual intercourse when she was 15 and 16 years old, although she no longer lived with Hanks when she was 16 years old. She testified that on the night of her 17th birthday, she again had nonconsensual sexual intercourse with Hanks at a motel after drinking alcohol with him.

2

Hanks testified at trial he had consensual sex with the victim at the motel. Hanks denied having any other sexual relationship with her before the motel incident.

As for Hanks' two offender registration charges, the State presented testimony from Lena Kastner with the Offender Registration Unit in the Sedgwick County Sheriff's Office. Kastner testified that Hanks failed to report two times, at the end of July 2020 and October 2020.

After hearing all the evidence and receiving instructions from the trial judge, the jury found Hanks guilty of four counts of rape, two counts of aggravated criminal sodomy, alternative counts of aggravated indecent liberties with a child and sodomy, and two counts of offender registration violations. The jury found Hanks not guilty of one count of aggravated criminal sodomy, one count of rape for the motel incident, and one count of furnishing alcohol to a minor. The district court sentenced Hanks only on the primary counts, not the four alternative counts.

Hanks timely appealed, offering numerous challenges to his conviction. Any other facts will be addressed throughout the opinion as they become relevant to the issues on appeal.

### DID THE STATE VIOLATE HANKS' CONSTITUTIONAL OR STATUTORY RIGHT TO A UNANIMOUS VERDICT?

Hanks' first argument broadly challenges his conviction, arguing that the State violated his right to a unanimous verdict, granted under the Sixth Amendment to the United States Constitution, section 5 of the Kansas Constitution Bill of Rights, and K.S.A. 22-3421. Hanks claims that when the State charges a defendant with one count of sexual abuse and the witness testifies to multiple accounts of sexual abuse without

specificity, the jury cannot unanimously agree on each separate act supporting each crime.

*Preservation and Standard of Review*

We must first address whether Hanks preserved this question for appeal. Hanks did not frame this issue before the district court as a constitutional challenge, although he sought a new trial and claimed he could not defend his case because the times and dates of the charged acts were not specified. The record shows that both posttrial motions Hanks asserted during sentencing included only evidentiary grounds, so he did not afford the trial court the opportunity to review his constitutional challenge adequately. And constitutional grounds for reversal asserted for the first time on appeal are generally not properly before this court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). But there are exceptions to this general rule. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

Another panel of our court in *State v. Hunt*, 61 Kan. App. 2d 435, 442-43, 503 P.3d 1067 (2021), addressed this constitutional issue, citing two such exceptions:  (1) The newly-asserted legal theory involves undisputed facts; and (2) consideration of the argument is necessary to prevent the denial of fundamental rights. See also *State v. Ninh*, 63 Kan. App. 2d 91, 118-19, 525 P.3d 767 (2023) (considering the unanimity issue for the first time on appeal under both exceptions), *rev. granted* 317 Kan. ___ (2023). And although we are not bound to consider an unpreserved issue for the first time on appeal, we may—and do—exercise our discretion to do so on the same bases. See *State v. Genson*, 316 Kan. 130, 135-36, 513 P.3d 1192 (2022). We do so because even addressing Hanks' claim on its merits, his argument that the State violated his right to a unanimous verdict still fails.

4

There is no doubt Hanks has both a constitutional and statutory right, under K.S.A. 22-3421, to a unanimous jury verdict. See *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014); see also *Ninh*, 63 Kan. App. 2d at 119 (panel articulating that the United States Supreme Court has found since the Sixth Amendment right to a jury trial in federal criminal cases is incorporated to state criminal prosecutions via the Fourteenth Amendment, the Sixth Amendment right to a unanimous verdict in federal criminal proceedings should also be extended to convictions in the state court) (citing *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 1396-97, 206 L. Ed. 2d 583 [2020]); *Hunt*, 61 Kan. App. 2d at 443 (same). Though the Kansas Supreme Court has not examined whether the Kansas Constitution offers similar protections, panels of our court have found as much, and we have no basis for disagreement. *Ninh*, 63 Kan. App. 2d at 119 ("'[T]here is a right to unanimous jury verdicts in criminal cases grounded in [section] 10 of the Kansas Constitution Bill of Rights and, perhaps, in [section] 5.'") (quoting *State v. Spackman*, No. 122,021, 2021 WL 4929156, at *4 [Kan. App. 2021] [unpublished opinion], *rev. denied* 315 Kan. 971 [2022]).

Because Hanks claims a violation of his right to a unanimous jury verdict, this court is presented with a question of law over which we exercise unlimited review. A review of this question involves two inquiries. First, we determine whether we are presented with a multiple acts case. *Santos-Vega*, 299 Kan. at 18. Then, we must decide whether the error, if any, was committed "because either the State must have informed the jury which act to rely upon for each charge during its deliberations or the district court must have instructed the jury to agree on the specific criminal act for each charge in order to convict." 299 Kan. at 18. A failure in either of these steps constitutes error. If the appellate court finds error, then the court determines whether the error was harmless or requires reversal, using the constitutional harmlessness standard for constitutional challenges and the statutory harmlessness standard for statutory claims. See *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016); *Santos-Vega*, 299 Kan. at 18.

*Unanimity Analysis*

First, we must decide whether multiple acts were presented by the State. *Santos-Vega*, 299 Kan. at 18. A court is presented with a multiple acts case when several acts are alleged, any of which could independently constitute the crime charged. *State v. Cottrell*, 310 Kan. 150, 154, 445 P.3d 1132 (2019). Hanks claims that the State presented many unspecified incidents of the acts of sexual intercourse underlying Counts 3, 4, 9, 10, and 11. Although the State does not outright confirm multiple acts were presented, it does concede as much by stating that a multiple acts jury instruction issued by the district court cured any error. At trial, the district court issued a multiple acts jury instruction—No. 23—that the jury "must unanimously agree upon the same underlying act" for "the crimes as charged in Counts 3 through 11."

The State solicited testimony from the victim alleging the illegal sexual acts occurred during multiple incidents when the victim was between the ages of 13 and 17. The parties do not appear to disagree on this point, and we find that multiple acts were presented by the State to support Counts 3 through 11. But Hanks' claim fails in the next step of the analysis—whether any error occurred.

As noted, the district court issued a multiple acts instruction, and we must presume the jury followed the instruction. See *State v. Gray*, 311 Kan. 164, 172, 459 P.3d 165 (2020) ("[W]e presume jury members follow instructions."). Because the district court "instructed the jury to agree on the specific criminal act for each charge in order to convict," Hanks cannot demonstrate error because of the district court's actions. See *Santos-Vega*, 299 Kan. at 18. So, then, this is a multiple acts case, but because the proper instruction was given by the district court, there is no error and we need not engage in any analysis of whether any nonexistent error was harmless.

Yet Hanks contends that even with the multiple acts jury instruction, the State still contravened his right to a unanimous verdict because of the way it presented its case. Hanks argues because the "State provided no evidence distinguishing the multiple incidents for each count from other incidents for the same count," the jury could not have agreed on any given incident.

But other panels of this court have convincingly reasoned that if we accept Hanks' argument the State did not provide enough evidence to separate and distinguish the victim's multiple allegations supporting each of the individual convictions, then a true multiple-acts issue did not exist and there was no violation of Hanks' right to a unanimous verdict. See *Ninh*, 63 Kan. App. 2d at 120-21; *Hunt*, 61 Kan. App. 2d at 446. And though Hanks urges us to disregard the analysis of these panels, specifically in *Hunt*, we find the analysis persuasive:

> "Hunt's case is typical of many cases alleging the defendant committed a sex act against a child. The child can often describe the sex act but is unsure of the time frame or how many times the act occurred. Unless the State presents evidence of separate and distinct acts that could cause jurors to disagree on which act supports the charge, there is no jury unanimity issue.
>
> "But even if count two can somehow be analyzed as a multiple acts crime, the district court instructed the jurors that they 'must unanimously agree upon the same underlying act.' Hunt cannot have it both ways. If the State's evidence did not separate and distinguish the acts supporting count two, then there is no jury unanimity issue. But if the State's evidence was presented in a way that could have caused jurors to disagree on which act supported the charge, then the jurors were instructed to unanimously agree on the act. See *State v. Race*, 293 Kan. 69, 77, 259 P.3d 707 (2011) (jurors are presumed to follow the court's instructions). Either way, the State's prosecution of count two did not violate Hunt's constitutional and statutory rights to a unanimous verdict." *Hunt*, 61 Kan. App. 2d at 446.

7

In *Hunt*, the victim was asked to describe the sexual act and after she was finished, the State followed with a question, "'Do you know in your head how many times this [act] would happen with him?'" 61 Kan. App. 2d at 444. The victim answered that she believed it was six times. Similarly, here the victim testified to the sexual acts with Hanks and when the State generically asked how often the act occurred or if the act continued, the victim broadly said constantly, gradually, or several times without specifics as to the dates and times. As the *Hunt* court articulated, the jurors could not have disagreed if there was no way for them to separate or distinguish the acts described by the victim. 61 Kan. App. 2d at 444.

More recently, in *Ninh*, another panel of this court affirmed the *Hunt* analysis, finding:

"Like the defendant in *Hunt*, Ninh cannot have it both ways. If this court accepts Ninh's argument that the State did not provide enough evidence to separate and distinguish the victim's multiple allegations supporting each of Ninh's individual convictions, then a true multiple-acts issue did not exist and there was no violation of Ninh's right to a unanimous verdict. However, if this court accepts Ninh's assertion that the State's evidence was presented in a way that the jurors could disagree as to which of the multiple acts supported each charge, then the multiple-acts instruction attached to Counts 1-6 cured any potential unanimity issues." *Ninh*, 63 Kan. App. 2d at 121.

The *Ninh* court further found Ninh's argument more of a sufficiency of the evidence challenge to the victim's testimony at trial rather than a traditional multiple acts challenge. 63 Kan. App. 2d at 121. The panel addressed this issue by reasoning that this challenge really equated to a credibility analysis, which the jury already examined, and is "'far different from a constitutional defect requiring reversal of a conviction for lack of jury unanimity.'" 63 Kan. App. 2d at 122 (quoting *Spackman*, 2021 WL 4929156, at *4).

8

Following the logic established by *Ninh* and *Hunt*, if the jury could not disagree on the act that supported the charges Hanks challenges because there was no way for them to distinguish the separate acts, then there is no jury unanimity issue. But if Hanks' argument is that the State presented its evidence in a way that the jurors could not agree on which acts supported which charge, then Hanks' right to a unanimous verdict was still not violated because the district court issued the jury unanimity instruction. Reiterating this court's previous findings on this issue in similar cases, Hanks cannot have it both ways, and we find Hanks' claim that his right to a unanimous verdict was violated unpersuasive.

### DID THE DISTRICT COURT LACK SUBJECT MATTER JURISDICTION OVER THE ALTERNATIVE CHARGES ALLEGED BY THE STATE?

Hanks next argues that because no Kansas statute grants the State the authority to charge a crime in the alternative, the State lacked the legal authority to charge the crimes in such a way. He claims that, as a result, the district court lacked subject matter jurisdiction over the alternative counts.

Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021). And, to the extent we examine related statutes, statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

*Kansas Law Authorizes the State to Charge in the Alternative*

In the final charging document, Hanks faced 13 counts related to his sexual conduct with the victim. Four of those counts—Counts 4, 6, 8, and 10—were charged as

9

alternatives to each immediately preceding charge. Hanks now argues that his conviction under all the alternative counts charged by the State was improper and void because the district court did not have subject matter jurisdiction over the alternative charges. Hanks claims no Kansas criminal statute grants jurisdiction to the district court to hear cases charged in the alternative.

The parties agree that two Kansas criminal statutes confer on the State broad discretion to pick and choose what offenses to charge in which manner. First, K.S.A. 2022 Supp. 21-5109(a) permits the State to prosecute multiple charges for the same crime:

> "When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. *Each of such crimes may be alleged as a separate count* in a single complaint, information or indictment." (Emphasis added.)

Also, K.S.A. 22-3202(1) authorizes the State to charge multiple offenses against the defendant in the same information, indictment, or complaint:

> "Two or more crimes may be charged against a defendant in the same complaint, information or indictment in *a separate count for each crime* if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Emphasis added.)

But the parties disagree on their interpretation of the statutes. Hanks argues that since neither law includes language permitting charging in the alternative, the district court is without jurisdiction to hear those charges. The State counters by asserting that the lack of such language does not restrict the manner in which the State could charge crimes, but rather gives the State broad discretion on how to charge multiple crimes.

10

Hanks' theory contains a critical flaw. He asserts that the caselaw favors his argument because an appellate court should not speculate the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). But the most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. 315 Kan. at 698. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. See *Betts*, 316 Kan. at 198.

There is no ambiguity that both statutes grant the State authority to present multiple charges for "each crime" as a "separate count" in the charging document. See K.S.A. 22-3202(1); K.S.A. 2022 Supp. 21-5109(a). Here, the State presented each charge as a separate count, under different criminal statutes, as authorized by K.S.A. 22-3202(1) and K.S.A. 2022 Supp. 21-5109(a). Just because these charges were presented in the information with the caveat "in the alternative" does not make those charges any less separate or dependent of its preceding counts. The jury is still required to weigh and determine all the elements of the crime charged. Where there is no ambiguity, the court need not resort to statutory construction. *Betts*, 316 Kan. at 198. The plain language of the statute is clear and does not support Hanks' argument that alternative charges are illegal under Kansas statutes.

Moreover, our Supreme Court has long held that it is proper for the State to charge in the alternative if evidence might support more than one criminal act. In *State v. Saylor*, 228 Kan. 498, 503-04, 618 P.2d 1166 (1980), our Supreme Court held:

> "It has long been the law of Kansas that an accusatory pleading in a criminal action may, in order to meet the exigencies of proof, charge the commission of the same offense in different ways. In such a situation, a conviction can be upheld only on one count, the function of the added counts in the pleading being to anticipate and obviate fatal variance

11

between allegations and proof. Thus, it has been held proper to charge by several counts of an information the same offense committed in different ways or by different means to the extent necessary to provide for every possible contingency in the evidence.

"Where there is a question in the mind of the prosecutor as to what the evidence will disclose at trial, the correct procedure is to charge the defendant in the alternative under those subsections [of the crime] which may possibly be established by the evidence. This may properly be done under Kansas law by charging several counts in the information to provide for every possible contingency in the evidence. By so doing, the jury may properly be instructed on the elements necessary to establish the crime of theft under any of the subsections charged and the defendant will have no basis to complain that he has been prejudiced in his defense. [Citations omitted.]"

See *State v. Alvarez*, 9 Kan. App. 2d 371, 373-74, 678 P.2d 1132 (1984). Our Supreme Court has not changed its stance or departed from its position in *Saylor*. Thus, there is no reason for this court to diverge from our Supreme Court's precedent. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

Hanks also cited to *City of Junction City v. Cadoret*, 263 Kan. 164, 946 P.2d 1356 (1997), in support of his theory, but *Cadoret* has no effect on this issue. Our Supreme Court in *Cadoret* held only that municipalities are without jurisdiction to find a defendant guilty of a felony because the state statute only confers jurisdiction to try felony cases in the district courts. 263 Kan. at 168. As described above, our Supreme Court precedent permits alternative charges. Hanks' argument is simply not supported by any legal authority or precedent.

Because the State had the authority to charge in the alternative, we find the district court did not lack jurisdiction to hear the alternative charges.

12

DID THE DISTRICT COURT ERR BY INSTRUCTING THE JURY TO PRESUME KNOWING MENTAL STATE IF THE STATE PROVED INTENTIONAL MENTAL STATE?

In his third argument, Hanks claims the district court erred by instructing the jury that if the State proved Hanks acted intentionally, then the State had also proved he acted knowingly. He asserts this error violated his constitutional right to have the State prove every element of the crime beyond a reasonable doubt.

*Applicable Legal Principles*

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words, whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021); see K.S.A. 2022 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

*The District Court Did Not Err*

First, as Hanks concedes, he did not raise this issue before the district court. A jury instruction issue raised for the first time on appeal affects the reversibility inquiry of this court at the third step, which we address below.

Second, we must determine whether the jury instruction was erroneous. Hanks contends that the instruction provided to the jury regarding his mental culpability was erroneous because the instruction contained an unconstitutional conclusive presumption.

13

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to prove each element of a crime beyond a reasonable doubt. *Yates v. Aiken*, 484 U.S. 211, 214, 108 S. Ct. 534, 98 L. Ed. 2d 546 (1988). Under this constitutional principle, evidentiary presumptions may not be included in jury instructions if they have the effect of relieving the State of its burden of proof beyond a reasonable doubt of every essential element of a crime. *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

To determine whether a jury instruction relieves the State of its burden of proof, we must first decide whether a mandatory presumption or merely a permissive inference is created by the challenged instruction. 471 U.S. at 313-14. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." 471 U.S. at 314. Thus, a permissive inference does not relieve the State of its burden of persuasion and only violates the Due Process Clause if the suggested conclusion is not one that is justified by reason and common sense. But if the challenged instruction creates a mandatory presumption and relieves the State of its burden of persuasion on an essential element of the offense, it violates the Due Process Clause. 471 U.S. at 314-15.

Here, the challenged jury instruction states:

"As used in these instructions, a defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State.

"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about.

"If the State has proved that the defendant acted intentionally, then the State has proved as well that the defendant acted knowingly."

The language of this instruction comes directly from the Kansas Pattern Instructions (PIK). See PIK Crim. 4th 52.010 (2021 Supp.); PIK Crim. 4th 52.020 (2021

14

Supp.). The instruction derives its authority from K.S.A. 2022 Supp. 21-5202(c), which outlines:

> "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

The Kansas law and PIK instructions also reflect certain requirements of culpability found in the Uniform Model Penal Code: "When acting knowingly suffices to establish an element, such element also is established if a person acts purposely." Model Penal Code § 2.02(5).

Hanks suggests we disregard the unpublished opinion of another panel of this court, contending it ruled incorrectly on a similar issue, but we find his argument unpersuasive. He claims that in *State v. Trefethen*, No. 119,981, 2021 WL 1433246 (Kan. App. 2021) (unpublished opinion), this court's focus on the logic of the statute's language rather than the proof of the criminal elements was incorrect. In *Trefethen*, this court held that "the State necessarily proves a defendant acts recklessly when it proves the defendant acts knowingly or intentionally, [so] the jury instruction did not relieve the State of its burden to prove that [the defendant] acted recklessly." 2021 WL 1433246, at *9. Hanks asserts that this logic is correct, but the conclusion is wrong because it effectively overrules the law of *Francis*, establishing that a mandatory presumption is unconstitutional. We disagree.

As the *Trefethen* court described, culpable mental states under the Kansas Criminal Code are now aligned along a sliding scale and are used to evaluate the defendant's criminal state of mind to assign the appropriate punishment based on the mental culpability proven. 2021 WL 1433246, at *9. Under K.S.A. 2022 Supp. 21-

15

5202(b): "Culpable mental states are classified according to relative degrees, from highest to lowest, as follows: (1) Intentionally; (2) knowingly; (3) recklessly." It is only logical, then, to interpret that if the highest mental state is proven, the lesser is also proven, which is also articulated in K.S.A. 2022 Supp. 21-5202(c). To construe the meaning of these provisions otherwise would generate an unreasonable or absurd result. *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020).

And it appeals to common sense that when one intends to engage in conduct or to cause a result, that person is aware of the nature of the conduct or what result that conduct would likely bring. Simply put in the context of this case, one cannot intentionally have sexual intercourse without knowing that he or she has engaged in sexual intercourse.

So, then, a review of the given instruction does, at first glance, suggest it created a mandatory presumption because it instructed the jury it must conclude Hanks acted knowingly if the State proved he acted intentionally. Yet this mandatory presumption did not violate the Due Process Clause because it did not relieve the State of its burden to prove beyond a reasonable doubt that Hanks "knowingly" engaged in sexual intercourse. How can this be so? Because the State proved a *higher* degree of mental culpability by demonstrating he acted "intentionally." Accordingly, the instruction did not violate Hanks' right to due process and the instruction at issue was not erroneous.

Finally, as we noted above, Hanks raises this issue for the first time on appeal. When a party asserts an instruction error for the first time on appeal, the giving or failure to give a legally and factually appropriate instruction is reversible only if it was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018); see K.S.A. 2022 Supp. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the instruction error had not occurred. The party

16

claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

We have already determined the instruction was legally appropriate, and Hanks presents no argument that it was somehow factually inappropriate. And, Hanks only offers a conclusory argument that it would be probable that the jury could have reached a different verdict, but cites no supporting authority or caselaw. For these reasons, Hanks fails to show error or prejudice and we find that the district court's jury instruction was not clearly erroneous.

IS K.S.A. 2022 SUPP. 21-5202(c) FACIALLY UNCONSTITUTIONAL?

In what amounts to a restatement of the previous issue, Hanks next argues that K.S.A. 2022 Supp. 21-5202(c)—providing that "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged"—is unconstitutional.

First, we note that Hanks concedes, and the State agrees, he did not raise this constitutional challenge in the district court. And, as stated above, we seldom review constitutional issues raised for the first time on appeal. *State v. Valdez*, 316 Kan. 1, 10, 512 P.3d 1125 (2022). There are recognized exceptions to this rule, including if the issue involves only a question of law arising on proved or admitted facts and would be determinative of the case. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). A direct challenge of a statute's constitutionality is a pure question of law. *State v. Bodine*, 313 Kan. 378, 396, 486 P.3d 551 (2021). And, Hanks has followed Kansas Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36), by arguing why this issue not raised below should be considered for the first time on appeal. *Johnson*, 309 Kan. at 995.

But most pertinent to Hanks' claim that K.S.A. 2022 Supp. 21-5202(c) is unconstitutional is that it is based on the same arguments as his preceding claim

regarding the jury instruction. Hanks again asserts that the statute forces a conclusive mandatory presumption, which violates the Due Process Clause because it relieves the State of the burden of proof, as articulated in *Francis*, 471 U.S. at 313. But as discussed fully above, this statute does not relieve the State of its burden of proof because the law requires the State to demonstrate a higher level of mental culpability in order for the presumption to satisfy a degree of lower mental culpability. See K.S.A. 2022 Supp. 21-5202(c).

Whether we decline to consider this unpreserved constitutional issue for the first time on appeal—which is at our discretion—or whether we were to rehash the discussion above regarding the mandatory presumption, either begs the same result: Hanks' argument that K.S.A. 2022 Supp. 21-5202(c) is unconstitutional fails.

DID THE STATE COMMIT PROSECUTORIAL ERROR DURING VOIR DIRE?

In his fifth contention on appeal, Hanks argues the prosecutor committed reversible error during voir dire, which alone should warrant reversal of all his convictions. Hanks claims the State undermined the presumption of innocence during voir dire. Specifically, he argues the prosecutor erred by stating, "A lot of times the defendant is the one who did it." He argues this comment impermissibly eroded Hanks' presumption of innocence by telling potential jurors that it is typical to find that the defendant is the one who committed the crime. Hanks reasons this supports a reversal of all his convictions and a remand for a new trial because it "subverted Hanks' presumption of innocence right out of the gate."

*Applicable Legal Principles*

The appellate court uses "'a two-step process to evaluate claims of prosecutorial error'": error and prejudice. *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019)

18

(quoting *Sherman*, 305 Kan. at 109). First, we decide whether an error occurred; that is, whether the prosecutor's actions "fall outside the wide latitude afforded prosecutors to conduct the State's case" in a way that does not "offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. Next, if there is error, we must decide whether such "error prejudiced the defendant's due process rights to a fair trial." 305 Kan. at 109. We review prejudice using the traditional constitutional harmlessness inquiry—whether "the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. *Sherman*, 305 Kan. at 114.

*Prosecutor Did Not Commit Error*

We note that Hanks did not raise this issue in the lower court. Even so, appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *Bodine*, 313 Kan. at 406.

When determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, we do not analyze the statement in isolation but must consider the context in which the statement was made. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). Context is critical to our review of the challenged statement here. When we examine the prosecutor's comments in context, we see the prosecutor was screening a potential juror and explaining that the State bears the burden to prove Hanks'

19

guilt beyond a reasonable doubt. The prosecutor's discussion with the potential juror, who was an engineering student, unfolded as follows:

"[PROSECUTOR]: So engineering. Can I use you as my corny law school example?

"[PROSPECTIVE JUROR]: Sure.

"[PROSECUTOR]: Okay. At the end of the case Judge is going to give you the law that applies to the case. It can be broken down to different claims or elements that have to be proven to you and the rest of the jurors beyond a reasonable doubt. Do you follow me so far?

"[PROSPECTIVE JUROR]: Yes, ma'am.

"[PROSECUTOR]: *A lot of times the defendant is the one who did it*; it happened in Sedgwick County, Kansas; and then the crime itself is in there as well. So the way you can kind of look at it is I have to prove like a math problem, two plus two plus two is six. Follow me so far?

"[PROSPECTIVE JUROR]: Yes, ma'am.

"[PROSECUTOR]: Let's say you go in the back jury room, you look at the law, the judge gives it to you, the State proved this one beyond a reasonable doubt, I'm going to give it a two. This one, I got reasonable doubt on it, I'm going to give it one. That one, proven beyond a reasonable doubt, I get two. Do you understand that the case, the charge, has not been proven to you beyond a reasonable doubt in that circumstance?

"[PROSPECTIVE JUROR]: Yes, ma'am.

"[PROSECUTOR]: And so the law says you have to find the defendant not guilty. Do you follow me so far?

"[PROSPECTIVE JUROR]: Yes, ma'am." (Emphasis added.)

The record shows that the portion of the prosecutor's comment Hanks challenges, when considered in isolation, gives the impression the prosecutor was inferring Hanks' guilt. But reading only the challenged comment detaches it from the full context of the exchange. When reading the prosecutor's comment in context, we see she was explaining to the potential juror the typical process of how a jury would reach a verdict by methodically reviewing each element contained in the jury instructions. One such

20

element often included is that the defendant on trial must be the person who committed the crime. The words "[a] lot of times the defendant is the one who did it" does not suggest to the potential jury pool there is a presumption that the individual sitting in the defendant's chair is likely to be guilty of the charged crime. It was merely used as one element, in a list of others—including location and specific elements of the crime—that must be proven beyond a reasonable doubt to find the defendant guilty.

Our Supreme Court addressed a similar issue in *State v. Robinson*, 303 Kan. 11, 363 P.3d 875 (2015), *overruled on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017). There, Robinson claimed the prosecutor's hypothetical question during voir dire asking jurors whether they could vote to acquit if the State did a poor job of presenting its case lessened the State's burden of proof and undermined his presumption of innocence. *Robinson*, 303 Kan. at 271-72. But our Supreme Court held that when "[v]iewing the voir dire record in its entirety," the prosecutor's remarks were not misconduct. 303 Kan. 272.

The purpose of voir dire is to enable the parties to select jurors who are competent and who could serve without bias, prejudice, or partiality. *State v. Woods*, 301 Kan. 852, 870, 348 P.3d 583 (2015). The prosecutor's comment was aimed at assessing the potential jurors' competency by explaining to them the trial process. Looking at the entire voir dire record, we find the prosecutor appropriately explained the presumption of innocence and the process required to find a defendant guilty.

The prosecutor's comment was a proper inquiry for voir dire and did not misstate the law. Viewing the comment in context, we find no misconduct. Because we find no error, we need not address the prejudice prong of the prosecutorial error analysis. See *Sherman*, 305 Kan. at 109.

21

## DID CUMULATIVE ERROR DENY HANKS A FAIR TRIAL?

After arguing all of the above alleged errors, Hanks also argues that cumulative error requires reversal of his conviction. And cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019).

But when an appellate court finds no errors exist, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Here, Hanks is simply unable to establish any errors, so the cumulative error analysis does not apply.

## DID THE STATE PRESENT INSUFFICIENT EVIDENCE TO PROVE HANKS' CONVICTIONS FOR KORA VIOLATIONS?

Hanks' next argument claims that the State failed to present sufficient evidence to support his two convictions for KORA violations.

*Applicable Legal Principles*

When we review a sufficiency of the evidence challenge in a criminal case, this court must "'review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). "This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

22

*Sufficient Evidence Supported Hanks' KORA Violation Convictions*

Hanks' challenge is actually a complaint about the wording of the charging document. He claims it contained allegations that were not proven sufficiently by the State at trial.

The challenged counts are Counts 14 and 15, which essentially contain identical wording aside from the initial date of violation:

"[O]n or about the [*1st day of August, 2020* (Count 14) and [*1st day of November, 2020* (Count 15)] A.D., one *BRYCE P HANKS did* then and there unlawfully, after being required to register pursuant to K.S.A. 22-4902 and amendments thereto, for conviction, to-wit: Possession of Cocaine with Intent to Sell, on the 24th day of March, 2010, in the Eighteenth Judicial District Court, in Case No. 2009CR2976, *fail to report in person* once during the month of the defendant's birthday, to-wit: January, and every third, sixth and ninth months occurring before and after the defendant's birthday month as directed, to the Sheriff's Office of Sedgwick County, the county in which the defendant resides or is located." (Emphases added.)

The jury instructions used similar language, again stating the date (on or about August 1 and on or about November 1) on which each violation allegedly occurred. Hanks argues that because the charging document used the word "and" stating he must report in "January, *and* every third, sixth *and* ninth months occurring before *and* after the defendant's birthday month," the State was required to prove he violated his reporting requirements seven times to prove each charge. (Emphases added.) Hanks cites to *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018), and *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015). Hanks generally asserts the State is bound by the words in the charging documents. Because he claims it is unclear whether the State must prove he violated once on the listed date, or whether the State must prove he violated seven times

23

due to the usage of "'and,'" there is ambiguity in the charging document that must be resolved in his favor.

We find Hanks' argument unconvincing. The two charges clearly state the date of the offense committed, with the first offense specified on August 1, 2020, and the second on November 1, 2020. The remainder of the language in each count is taken from K.S.A. 2022 Supp. 22-4905(b) and only serves as a superfluous explanation of what months the offender must report in to comply with the statute. No additional evidence was necessary to find Hanks in violation of his reporting requirements, as the two alleged dates of violation were clearly specified in the charges:  August 1, 2020, and November 1, 2020. And the registration officer testified specifically on Hanks' failure to register in the months immediately preceding those two dates.

"Where an indictment or information contains immaterial and unnecessary allegations which could have been omitted without affecting the charge, such allegations may be treated as surplusage and disregarded." *State v. Sharp*, 202 Kan. 644, Syl. ¶ 2, 451 P.2d 137 (1969). The failure to prove surplusage at trial is not a fatal defect. *State v. Barncord*, 240 Kan. 35, 41, 726 P.2d 1322 (1986); *State v. Martinez-Perez*, No. 109,383, 2014 WL 2401660, at *4 (Kan. App. 2014) (unpublished opinion).

Here, although the general language of the charges is verbose, the added language is mere excess which can be disregarded. And, viewed in the light most favorable to the State, it was reasonable for the jury to find that Hanks failed to report on August 1, 2020, and November 1, 2020. As a result, we find there was sufficient evidence for the jury to convict Hanks on the KORA violations as charged.

## SHOULD WE REACH THE ISSUE OF THE CONSTITUTIONALITY OF THE RAPE, SODOMY, AND AGGRAVATED INDECENT LIBERTIES STATUTES?

Hanks' final argument challenges the constitutionality of the statutes under which he was convicted: K.S.A. 2016 Supp. 21-5506(b)(1), K.S.A. 2016 Supp. 21-5504(a)(3), and K.S.A. 2016 Supp. 21-5503(a)(3). He claims these rape, sodomy, and aggravated indecent liberties laws are not narrowly tailored to satisfy any compelling interest where they categorically restrict sexual activity for people under age 16. He claims "the right to control one's own body, to assert bodily integrity, and to exercise self-determination" as described in *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 680, 440 P.3d 461 (2019), should also apply to the right to choose one's own sexual partner.

*Hanks' Claim is Unpreserved*

As Hanks concedes, this constitutional challenge was not raised before the district court and is not properly preserved for appellate review. As discussed above, appellate courts generally will not review allegations of constitutional violations raised for the first time on appeal. *Valdez*, 316 Kan. at 10. Again, the courts have recognized three exceptions to this rule, and if an exception applies, a court may, but is not required to, consider unpreserved issues for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Hanks argues we should still consider the issue because it satisfies the first and second exceptions to the preservation rules, which are: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; and (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *Allen*, 314 Kan. at 283. A direct challenge of a statute's constitutionality is a pure question of law. *Bodine*, 313 Kan. at 396.

But Hanks oversimplifies what would be required for review of his question. He does not try to apply the challenged statutes to the specific facts of his case, but he

suggests we apply K.S.A. 2016 Supp. 21-5506(b)(1), K.S.A. 2016 Supp. 21-5504(a)(3), and K.S.A. 2016 Supp. 21-5503(a)(3) to a set of particular circumstances with hypothetical children aged 13 to 15 years old. Hanks contends some "minors who possess sufficient knowledge, wisdom, and maturity" would then have the right to bodily autonomy, including the fundamental right to choose one's sexual partner. So, he asks us to find that because some sufficiently mature 13-, 14-, or 15-year-olds have the right to sexual intercourse with the partner of their choice, the application of the challenged statutes is unconstitutional. Hanks' argument seems to be based on the idea that some children could be mature enough to have a constitutional right to sex with the partner of their choosing. See *State v. Davis*, No. 124,980, 2023 WL 5811485, at *3 (Kan. App. 2023) (unpublished opinion).

But how would we know if these hypothetical children are, in fact, mature enough? A court would have to make this factual finding. And such fact-finding is not the purview of the appellate courts.

Instead, it must be the district court who makes these factual findings. *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 4, 446 P.3d 1103 (2019). This is because appellate courts are prohibited from engaging in fact-finding without a developed factual record. See *State v. Shipley*, 62 Kan. App. 2d 272, 281-82, 510 P.3d 1194 (noting the appellate "panel would have benefitted from a full factual development and the district court's analysis of this important [constitutional] argument that Shipley failed to raise), *rev. denied* 316 Kan. 763 (2022). Accordingly, Kansas courts have found the failure to present an argument to the district court "deprived the trial judge of the opportunity to address the issue in the context of this case and such an analysis would have benefitted our review," and thus declined to consider unpreserved claims. *Gray*, 311 Kan. at 170.

Our decision to review an unpreserved claim under either exception presented by Hanks is a prudential one, and even if one of the exceptions were satisfied, we are under

no obligation to review the newly asserted claim. *State v. Robison*, 314 Kan. 245, 248, 496 P.3d 892 (2021); *Gray*, 311 Kan. at 170. Again, this court has consistently rejected the application of exceptions to the preservation rule when the constitutional challenge is based on facts not found by the district court. See *Shipley*, 62 Kan. App. 2d at 282-83 (declining to apply preservation exceptions where an as-applied constitutional challenge was based on facts not found by the district court); *State v. Pearson*, No. 125,033, 2023 WL 2194306, at *1 (Kan. App. 2023) (unpublished opinion) (declining to reach the merits of the constitutional argument for the first time on appeal), *petition for rev. filed* March 20, 2023; *State v. Jones*, No. 124,174, 2023 WL 119911, at *5 (Kan. App. 2023) (unpublished opinion) (same), *rev. granted* 317 Kan. ___ (2023). Following suit, we decline to further address the merits of Hanks' constitutionality challenge.

Affirmed.