NOT DESIGNATED FOR PUBLICATION

No. 127,098

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTEN DREHER
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; M. JENNIFER BRUNETTI, judge. Oral argument held January 7, 2025. Opinion filed February 7, 2025. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and COBLE, JJ.

PER CURIAM: Kristen Dreher appeals her convictions for forgery, felony theft, and identity theft based on the State's claim that she cashed another person's check at the Community National Bank. Dreher argues: (1) Under the best evidence rule, the district court should not have permitted the State to present still photos taken of the bank's security footage of the incident; (2) the State failed to properly authenticate the photos of the security video; (3) the district court constructively amended the identity theft charge with the jury instruction; and (4) cumulative error deprived her of a fair trial. Finding no reversible error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May 2022, Rebecca Stallings wrote a check for $4,049 to her sister, Terri Burns, to reimburse her for funeral expenses after their father's passing. The check was drawn on Stalling's account at the Community National Bank in Pittsburg, Kansas. Stalling mailed the check to Burns from a mail drop box in Pittsburgh. But when Stallings spoke with Burns several days later, she learned that Burns had never received the check. Stallings called her bank and was told that the check had been cashed at the Girard branch of the Community National Bank on May 10, 2022.

Maria Brauer, a teller at the Girard branch of the Community National Bank, recalled that she was working on May 10, 2022, when a woman who did not have an account at the bank cashed the check. Brauer asked the woman, who had pulled up at the bank's drive-thru window, to provide identification. The woman replied that she was waiting for a new identification card to come in the mail and instead gave her a temporary paper copy of identification, which listed her name as Terri Burns. After ensuring "that the signatures of the account owner were correct and authentic," Brauer cashed the check, gave the woman the $4,049, and told her to have a great day. Although it was the bank's policy to record personal information from any person that did not have an account with the bank, Brauer did not do so that time.

Later that month, Mary Tyrell, the assistant vice president and administrative assistant at the Girard branch of the Community National Bank was contacted by the Pittsburgh branch about Stallings' check to Burns. Upon learning that the check was not actually cashed by Burns, Tyrell filed a report with the police department. She then reviewed security camera footage of the drive-thru lane at the time the check was cashed and took stills from the video showing the car and the woman who had cashed it.

2

Officer James Jarvis reviewed the surveillance footage from the bank's security cameras on Tyrell's computer, and Tyrell gave him the photos she had taken from the video. Tyrell did not give Jarvis a copy of the video; he later testified that he was able to verify that the photo stills were directly captured from the surveillance footage. Tyrell explained that she could not give Jarvis a copy of the surveillance footage because it is against bank policy to "put any kind of device [such as a flash drive] into [their] computers." Jarvis then spoke with Brauer, the teller who had cashed the check, who told him that the paper identification of the woman who cashed the check at the drive-thru contained "a picture that resembled the driver, and the signatures appeared to match."

Although the license plate of the car was somewhat obscured in the photos, Jarvis began investigating the "somewhat heavier set white female" in the driver's seat who had cashed the check. Another officer, Sergeant Seirra Roberts, was immediately able to identify the woman as Dreher. Roberts had seen Dreher driving the same car shown in the photos many times and had the license information memorized from prior investigations. Roberts then went to the home where she believed Dreher was staying, found the car, and took pictures of it.

The State charged Dreher with forgery, felony theft, identity theft, and misdemeanor theft—based on the theft of the personal check. The district court appointed counsel for Dreher and entered a discovery order.

At trial, Stallings, Brauer, Tyrell, Burns, Jarvis, and Roberts testified for the State. During Tyrell's testimony, the State offered into evidence the still photographs that Tyrell took from the bank's security footage. Dreher's attorney objected, arguing that the still photographs were inadmissible under the best evidence rule without the surveillance video and that the State could not lay a sufficient foundation to admit the photographs. Dreher contended that the State was in possession of the surveillance video and had not turned it over to the defense in discovery. The district court conducted a voir dire

examination of Tyrell and Jarvis outside the jury's presence, during which the State maintained that it had never received the surveillance video from the bank and that Jarvis had merely watched the video with Tyrell. The district court overruled Dreher's objection and admitted the two still photographs, explaining that it credited the testimony that the State never possessed the surveillance video and that the photographs were accurate representations of the video. At the close of the State's case, Dreher moved for a directed verdict on the misdemeanor theft charge which the district court granted.

Dreher presented an alibi defense, calling her friend Jamie Hermreck to testify about her whereabouts on the day the check was cashed. Hermreck recalled that she had picked up Dreher on either May 9 or 10, 2020, and they had travelled to La Harpe, Kansas—about 50 miles away from Girard—to take care of a mutual friend who was gravely ill. She testified that they stayed in La Harpe for several days and were not in Girard on the day the check was cashed at the Community National Bank.

After hearing the evidence, the jury found Dreher guilty of forgery, felony theft, and identity theft. The district court sentenced Dreher to a controlling term of 18 months' imprisonment but granted probation for 18 months to be supervised by community corrections. Dreher timely appealed the district court's judgment.

DID THE ADMISSION OF THE PHOTO STILLS VIOLATE THE BEST EVIDENCE RULE?

Dreher argues that the district court committed reversible error by allowing the State to introduce photo stills of the bank's security video into evidence at trial over her objections based on the best evidence rule. The State contends that Dreher's challenge based on the best evidence rule is not preserved for this court's review, and, even if her argument is preserved, it is meritless because there is no question about the authenticity of the photographs and the surveillance video was never in the State's possession.

4

We begin with the State's contention that the issue is not preserved for appeal. The State asserts that although Dreher's initial objection to the photo stills was based on the best evidence rule, Dreher changed the basis of her objection and argued that the State had never turned over the surveillance video to the defense. Thus, the State argues the district court was never given the chance to make a full ruling on the best evidence rule.

K.S.A. 60-404 provides that before an evidentiary issue may be considered on appeal, a party must make a timely and specific objection to the evidence in district court. The record shows that Dreher's attorney made a timely and specific objection to the photo stills based on the best evidence rule. When the State attempted to introduce the photo stills taken from the bank surveillance footage, Dreher's attorney objected, "Your Honor, I would object on grounds of best evidence as well as foundational purposes, Your Honor." Although counsel elaborated that the State possessed the surveillance video without turning it over to the defense in discovery, this argument did not change the basis of Dreher's objection to the photo stills. Thus, the State's preservation argument fails.

The parties cite differing standards of review for an evidentiary challenge based on the best evidence rule. Citing *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011), Dreher contends this court has unlimited review of her challenge because it involves interpretation of K.S.A. 60-467, where the best evidence rule is codified. The State asserts that courts traditionally review challenges based on the best evidence rule for an abuse of discretion, citing *State v. Robinson*, 303 Kan. 11, 221, 363 P.3d 875 (2015), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017).

While the admission of evidence involves several legal considerations, "[a]ppellate review of the trial court's application of the applicable legal rules and principles depends upon whether the rule or principle permits the trial court to exercise its discretion (abuse of discretion review) or whether the rule raises questions of law (unlimited review)." *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018). Dreher argues the district

court violated the best evidence rule, when it admitted the photographs that Tyrell took of the bank's security footage. While Dreher contends the district court's decision was based on an error of law in applying the best evidence rule, it appears the statute grants a district court discretion in making a ruling on the matter. See K.S.A. 2023 Supp. 60-467(a), (b). Regardless, resolution of Dreher's argument requires interpretation of K.S.A. 2023 Supp. 60-467, a question of law subject to unlimited review. *Dale*, 293 Kan. at 662.

In 2021, the Legislature amended the best evidence rule, now codified in K.S.A. 2023 Supp. 60-467; it appears that no Kansas appellate court has yet addressed these substantive changes. L. 2021, ch. 65, § 4. While Dreher appears to at least partially reference the current language of the statute, the State quotes the prior version of K.S.A. 60-467. Neither party acknowledges the fact that the caselaw they cite refences the old version of the rule.

Under the current statute, the best evidence rule provides that "[a]n original writing, recording or photograph is required in order to prove its content unless these rules or a statute provide otherwise." K.S.A. 2023 Supp. 60-467(a). Next, the statute provides: "A *duplicate* is admissible to the same extent as the original *unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate*." (Emphases added.) K.S.A. 2023 Supp. 60-467(b). Significantly, the language in K.S.A. 2023 Supp. 60-467(b) was not included in the prior version of the statute. A "[d]uplicate" is broadly defined as "a counterpart produced by a mechanical, photographic, chemical, electronic or other equivalent process or technique that accurately reproduces the original." K.S.A. 2023 Supp. 60-467(h)(4).

Dreher asserts that "[p]hoto stills of surveillance footage may be admissible, but only *after* the original footage has been admitted." To support this proposition she cites, *Dale*, 293 Kan. at 662-63, in which the Supreme Court found no violation of the best evidence rule when the State introduced a "slow motion enhancement" of a video that it

6

had already admitted into evidence because the enhanced version was not being introduced to prove the content of the writing. The State debates whether *Dale* stands for the proposition Dreher alleges, but an analysis on that point is irrelevant considering the best evidence rule had been amended to its current version at the time of Dreher's trial in September 2023. The rule in place at the time *Dale* was decided is not the same rule that governed Dreher's trial. The difference between the two versions is especially apparent when considering the current statute's treatment of the admissibility of a "duplicate" of an original in subsection (b), which both parties overlook.

Under the plain language of the current statute, K.S.A. 2023 Supp. 60-467(h)(4) provides the definition of a "duplicate" as including counterparts made by a broad range of processes, including photographic or electronic reproduction. The photo stills may be considered duplicates under the plain meaning of K.S.A. 2023 Supp. 60-467(h)(4) because they were produced by photographic or electronic means and they accurately reproduced the content of the original video. Tyrell testified that she "pulled off" the photographs "from [the] security camera system," and they were true and accurate representations of the contents of the surveillance video. Jarvis also testified that he viewed the surveillance video and was able to verify that the photo stills were directly captured from the footage. In short, the photo stills are duplicates under K.S.A. 2023 Supp. 60-467(h)(4) as they reproduced images from the surveillance footage and are "counterparts" that were made by either "photographic" or "electronic" means, and the witness who made them testified that they accurately depicted the surveillance footage.

Because the still photographs taken of the security camera footage can be classified as duplicates, the remaining questions about their admissibility are (1) whether Dreher raised any *genuine* question about the original's authenticity and (2) whether it would be unfair to Dreher for the court to permit the State to admit them. If the answers to these questions are both no, then the duplicate photo stills were admissible "to the same extent as the original." K.S.A. 2023 Supp. 60-467(b).

7

Dreher argues she raised a genuine question about the authenticity of the surveillance video because her trial attorney challenged whether the State had laid a sufficient foundation for the photo stills to be admitted. We will address this issue more fully in the next section of this opinion. But Dreher's objection to foundation did not impugn the authenticity of the footage. Tyrell confirmed that her branch had security cameras of the drive-thru window. She also confirmed that those cameras captured footage of the woman who cashed the check, that she took still photographs from that video, and that the photos were true and accurate depictions of what was on the video. In response, Dreher's attorney objected that Tyrell did not have enough knowledge about the operation of the surveillance system to lay a foundation, not that the video was somehow inauthentic. A fair reading of the record shows that while Dreher may have contended that she was not the woman in the video, she did not contest whether the content of the security footage itself was authentic. Because the record does not contain any genuine dispute about the security video's authenticity, the photographs taken from that video are not inadmissible on those grounds.

Turning to prejudice, Dreher asserts that it was unfair to admit the photographs because the "surveillance footage offers a more complete and accurate representation of the identity of the suspect in this case." In other words, Dreher contends that it was prejudicial to only use two frames from the video rather than the footage of the entire incident. It is not immediately clear how the State's use of the photographs, instead of the entire video of the incident, could have had any impact on the State's requirement to prove each element of the charged offenses. Both the original and the duplicate displayed the same thing. It is unclear how the pictures of the video could have improperly swayed the jury as Dreher suggests they did.

Ultimately, Dreher's identity was discovered via an officer's investigation using the photographs due to another officer's familiarity with Dreher's appearance, but the video would have offered the same indicators of her identity as the pictures, which were

merely static frames of the content of the video. If Dreher's sweeping claim on prejudice carries the day, we would need to find that it is always unfair for a party to introduce individual photographs taken from a surveillance video. Dreher provides no indication of any circumstances under which this court could conclude that the district court abused its discretion by finding the use of the duplicate photographs was not unfair.

Finally, Dreher argues that none of the "exceptions" to the best evidence rule provided in K.S.A. 2023 Supp. 60-467(d) would allow the State's use of the photographs. Again, this argument overlooks the application of K.S.A. 2023 Supp. 60-467(b)—the State did not need to utilize subsection (d) to admit the photographs because they were duplicates, and as such they were admissible to the same extent as the original, regardless of whether the video was in the State's control or outside the reach of the court's process.

Under the current version of the statute, a duplicate—i.e., "a counterpart produced by a mechanical, photographic, chemical, electronic or other equivalent process or technique that accurately reproduces the original"—is admissible to the same extent as the original. K.S.A. 2023 Supp. 60-467(b), (h)(4). Here, the photo stills taken from the bank's surveillance video were duplicates. Because there was no genuine question raised about the authenticity of the video or any circumstances that would have made it unfair to admit the duplicates, the photo stills were admissible under K.S.A. 2023 Supp. 60-467(b). We conclude the district court did not abuse its discretion in overruling Dreher's objection to the admission of the photo stills based on the best evidence rule.

DID THE STATE FAIL TO AUTHENTICATE THE PHOTOS OF THE SECURITY VIDEO?

Dreher contends that the State failed to authenticate the photographs taken from the surveillance video because a bank employee named Janet, who Tyrell said maintained the camera system and helped her locate the video on the bank's computer system, did not testify. Dreher argues that Janet was the only person with sufficient knowledge and

9

experience regarding the security cameras to properly lay a foundation for introducing the photographs. The State contends the district court did not abuse its discretion in finding there was sufficient foundation to admit the photographs.

This court reviews authentication challenges for an abuse of discretion. *State v. Jenkins*, 311 Kan. 39, 45, 455 P.3d 779 (2020) ("'The question of whether evidentiary foundation requirements have been met is left largely to the discretion of the district court. Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view.'").

Authentication of evidence is addressed in K.S.A. 2023 Supp. 60-464(a), which simply requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The burden for establishing foundation requires only evidence "'sufficient to support a finding that the matter in question is what its proponent claims.'" *Jenkins*, 311 Kan. at 51. "The burden of authentication is 'minimal' or 'slight,' and there is 'no precise formula' for district judges to determine authenticity." 311 Kan. at 51. And after that burden is met, any "'discrepancies and other conflicting evidence go to the weight, not the admissibility, of the writing.'" 311 Kan. at 51.

In laying foundation for the photographs, the State offered the testimony of Tyrell, who testified that the security cameras captured the view out of the drive-thru window and the back of the car at the window. She explained that another employee, Janet, helped her to find the video from the time the check was fraudulently cashed, but that she personally took the photographs of the video. Tyrell testified that the photographs were taken directly from the video and that they were true and accurate representations of what the security footage showed. Jarvis also testified about the authenticity of the security footage stills. He described the perspective of the security camera, which showed customers at the drive-thru window, and explained, "I was given access to the

surveillance footage that they claim they pulled the photos from, and I was able to verify that the photos were, in fact, from the surveillance footage."

Dreher argues that because Tyrell testified that another employee, Janet, "takes care" of the security cameras, the photographs could only be authenticated by Janet. This is the same argument she made at trial. The district court overruled her objection, explaining it was "satisfied that the testimony was that it was an accurate—the photographs were accurate, . . . accurate depictions of the video footage from those."

Dreher provides no authority to support her argument that the person who "maintain[s]" a security camera system is necessary to lay foundation. As explained above, a district court has considerable discretion in making evidentiary rulings concerning foundation evidence—so long as the proponent of the evidence presents evidence that supports a finding that the item is what the proponent claims. Here, the testimony of Tyrell and Jarvis supports such a finding. We conclude the district court did not abuse its discretion in finding that the State provided sufficient foundation for the admission of the photographs from the security camera footage.

DID THE DISTRICT COURT CONSTRUCTIVELY AMEND THE IDENTITY THEFT CHARGE?

For the first time on appeal, Dreher claims the district court's jury instruction on the charge of identity theft constituted a constitutionally impermissible constructive amendment because it included a longer list of personally identifying information than the complaint. The State argues that this court should decline to address Dreher's argument because it is unpreserved; alternatively, it maintains that the district court's instruction did not amount to an unconstitutional constructive amendment.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Holley*, 315 Kan. 512, 524, 509

11

P.3d 542 (2022). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Dreher has complied with Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) by asserting that the first two exceptions apply here. We cannot say that this issue is determinative of the case, but it governs the identity theft charge. We grant Dreher's request to consider this issue under the exceptions she has asserted.

Kansas courts address constructive amendment claims by following federal caselaw from the Tenth Circuit Court of Appeals. *State v. Dickerson*, No. 125,529, 2024 WL 62834, at *2 (Kan. App. 2024) (unpublished opinion). "Whether a constructive amendment occurred is subject to de novo review." *State v. Hunt*, 61 Kan. App. 2d 435, 438-39, 503 P.3d 1067 (2021) (citing *United States v. Farr*, 536 F.3d 1174, 1179 [10th Cir. 2008]); see also *State v. Nesbitt*, No. 121,647, 2021 WL 3124049, at *3 (Kan. App. 2021) (applying *Farr*'s constructive amendment rules for indictments to an information).

> "Differences in the charged conduct and the evidence proven at trial present variances which may warrant reversal. A variance may occur in two different ways: (1) where the charging terms do not change, but the evidence at trial proves facts materially different from the facts alleged in the complaint; and (2) where the evidence presented at trial, coupled with the jury instructions, so alters the complaint as to charge a different crime. See *United States v. Koerber*, 10 F.4th 1083, 1115-16 (10th Cir. 2021), *cert. denied* 143 S. Ct. 326 (2022). The first scenario presents a simple variance which triggers harmless error review; the latter presents an impermissible constructive amendment which is reversible per se." *Dickerson*, 2024 WL 62834, at *2.

Thus, to resolve this issue, we must determine whether Dreher's identity theft conviction was the same crime that was alleged in the complaint—that is, whether the jury instruction and proceedings at trial broadened the possible bases for conviction beyond those found in the charging document.

The State charged Dreher with identity theft as follows:

"COUNT 3. That on or about the 10th day of May, 2022, in Crawford County, Kansas, Kristen Nicole Dreher, then and there being present did unlawfully, feloniously, and with the intent to defraud Terri Burns or any one else for any benefit, obtain, possess, transfer, use, sell or purchase any *personal identifying information, or document containing personal identifying information, to-wit: name, of Terri Burns*, other than that issued lawfully for the use of the possessor. In violation of K.S.A. 21-6107(a), Identity Theft, a severity level 8 nonperson felony." (Emphasis added.)

But, at trial, the district court instructed the jury, in part:

"In Count 3, the defendant is charged with identity theft. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
"1. The defendant used any *personal identity information or document containing personal identifying information belonging to or issued to Terri Burns*.
"2. The defendant did so with the intent to defraud Community National Bank in order to receive a benefit.
"3. This act occurred on or about the 10th day of May, 2022, in Crawford County, Kansas.

"'Personal identifying information' includes the following: name; birth date; address; telephone number; driver's license number or card or non-drivers identification number or card; social security number or card; place of employment; employee identification numbers or other personal identification numbers or cards; mother's maiden name; birth, death or marriage certificates; electronic identification numbers; electronic signatures; and any financial number or password that can be used to access a person's

13

financial resources, including checking or savings accounts, credit or debit card information, demand deposit, or medical information. Personal identifying information also includes passwords, usernames, or other log-in information that can be used to access a person's personal electronic content, including content stored on a social networking website." (Emphasis added.)

Dreher is correct that the jury instruction included a broader definition of personal identifying information than the complaint, and because the instruction did not conform to the narrow elements of the crime charged in the complaint, the instruction was erroneous. See *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015) ("'A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous.'"). While the complaint specified that Dreher had committed the offense by using Burns' name, the instruction stated that the jury could find her guilty of using any of a long list of different types of personal information. That said, this error is not reversible because the instruction created a simple variance—not a constructive amendment—and the error itself was harmless.

"An unconstitutional constructive amendment occurs 'when the evidence presented at trial, together with the jury instructions,' alters the charge in such a way as to charge a different offense from the one found in the charging document." *Nesbitt*, 2021 WL 3124049, at *3 (quoiting *Farr*, 536 F.3d at 1180). In *Nesbitt*, this court found that no constructive amendment occurred when the charging document charged the defendant with aggravated robbery based on the infliction of bodily harm *to a named victim* while the jury instruction merely stated the jury had to find bodily harm was inflicted *on any person*. 2021 WL 3124049, at *4. This court explained that "the essential elements of the crime involve the statutory elements, not the specific actions or specific persons listed in the charging document" and concluded that the instruction nevertheless contained the essential elements of aggravated robbery as it was charged. 2021 WL 3124049, at *4-5.

14

In *State v. Stohs*, 63 Kan. App. 2d 500, 507-08, 531 P.3d 500 (2023), a defendant challenged a variance between a charging document and jury instruction for an identity theft charge. In that case, the defendant argued the instruction broadened the number of ways the jury could find him guilty because the indictment charged him with intending to defraud "either Greemore or Officer Child" but the instruction stated that he could be found guilty for intending to defraud "'Officer Child and/or Officer Stricklin'"—that is, the instruction added a possible victim. After considering the evidence and the impact of the erroneous instruction, the *Stohs* court concluded that the error had not prejudiced the defendant as it was "not firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given." 63 Kan. App. 2d at 508.

Dreher's defense did not center on the type of information used to commit the identify theft, but on her alibi—that she was not the person who cashed the check because she was somewhere else. Based on Dreher's reliance on this defense, the particular type of information she used would be immaterial if the jury believed her account of events. The evidence at trial conformed with the charge in the complaint—the State alleged that Dreher used a false driver's license that had Burns' name but a picture of Dreher when she cashed the check. Dreher had adequate notice of the charge against her and cannot show any prejudice caused by the variance in the jury instruction. While the jury instruction on identity theft may have broadened the types of personal identifying information beyond just the victim's name, its elements matched the language of the identity theft charge in the complaint. We conclude the error Dreher complains of was a simple variance, not a constructive amendment, and that error was harmless.

DID CUMULATIVE ERROR DEPRIVE DREHER OF A FAIR TRIAL?

Finally, Dreher argues cumulative error deprived her of a fair trial. Cumulative trial errors, when considered together, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially

15

prejudiced by the errors and denied a fair trial. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024). But the cumulative error doctrine does not apply when there is no error or only one error. *State v. Sieg*, 315 Kan. 526, 536, 509 P.3d 535 (2022). We have identified only one harmless error committed at Dreher's trial, the variance in the jury instruction on the identity theft charge. Thus, Dreher's cumulative error claim fails.

Affirmed.